Vanessa **CALLOWAY**, a minor by her mother and next friend, Inez Calloway, Plaintiff-Appellant,

v.

Paul W. **BRIGGS**, Superintendent of Schools, Cleveland School District, et al., Defendants-Appellees.

No. 20471.

United States Court of Appeals, Sixth Circuit.

May 24, 1971.

O'Sullivan, Senior Circuit Judge, dissented and filed opinion.

Gregory B. Taylor, Cleveland, Ohio, for plaintiff-appellant; C. Lyonel Jones, Gregory B. Taylor, Nancy Schuster, Cleveland, Ohio, on brief.

Charles F. Clarke, Cleveland, Ohio, for defendants-appellees; William C. Hartman, Charels F. Clarke, George W. Pring, Squire, Sanders & Dempsey, Cleveland, Ohio, on brief.

Before EDWARDS and MILLER, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

EDWARDS, Circuit Judge.

This appeal apparently contains some dramatic background facts, but the legal issue which we have to decide is a quite prosaic one: Did this complaint require decision by a three-judge federal court rather than by a single District Judge? Since we believe that it did, we do not reach the merits of the dispute which gave rise to the case.

The complaint filed in this case alleged in part:

"1. This is an action for declaratory and injunctive relief and for damages pursuant to Title 42, U.S. Code, Section 1983 to secure relief against the enforcement of Section 3313.66 Ohio Revised Code, for the reason that said statute denies the plaintiff due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution in that it authorizes the expulsion of pu-

pils from a public school without notice and a due process hearing prior to such expulsion."

The statute under attack provides as follows:

"The superintendent of schools of a city or exempted village, the executive head of a local school district, or the principal of a public school may suspend a pupil from school for not more than ten days. Such superintendent or executive head may expel a pupil from school. Such superintendent, executive head, or principal shall within twenty-four hours after the time of expulsion or suspension, notify the parent or guardian of the child, and the clerk of the board of education in writing of such expulsion or suspension including the reasons therefor. The pupil or the parent, or guardian, or custodian of a pupil so expelled may appeal such action to the board of education at any meeting of the board and shall be permitted to be heard against the expulsion. At the request of the pupil, or his parent, guardian, custodian, or attorney, the board may hold the hearing in executive session but may act upon the expulsion only at a public meeting. The board may, by a majority vote of its full membership, reinstate such pupil. No pupil shall be suspended or expelled from any school beyond the current semester." Ohio Rev.Code § 3313.66 (Supp.1969).

Appellant does not contest her suspension from a Cleveland high school, but does complain that she was expelled from the Cleveland Public Schools without a hearing, in violation of the United States Constitution's requirement of due process of law. Paragraph 10 of her complaint says:

"Vanessa Calloway was not offered an opportunity, at any time prior to her expulsion, to appear at a hearing to defend herself against the charges raised against her. The plaintiff was afforded no prior notice that the defendant, Paul W. Briggs, was considering expelling her from the Cleveland Public Schools."

In this respect appellant relies primarily upon a Fifth Circuit case wherein that court declared:

"For the guidance of the parties in the event of further proceedings, we state our views on the nature of the notice and hearing required by due process prior to expulsion from a state college or university. They should, we think, comply with the following standards. The notice should contain a statement of the specific charges and grounds which, if proven, would justify expulsion under the regulations of the Board of Education. The nature of the hearing should vary depending upon the circumstances of the particular case. The case before us requires something more than an informal interview with an administrative authority of the college. By its nature, a charge of misconduct, as opposed to a failure to meet the scholastic standards of the college, depends upon a collection of the facts concerning the charged misconduct, easily colored by the point of view of the witnesses. In such circumstances, a hearing which gives the Board or the administrative authorities of the college an opportunity to hear both sides in considerable detail is best suited to protect the rights of all involved. This is not to imply that a full-dress judicial hearing, with the right to cross-examine witnesses, is required. Such a hearing, with the attending publicity and disturbance of college activities, might be detrimental to the college's educational atmosphere and impractical to carry out. Nevertheless, the rudiments of an adversary proceeding may be preserved without encroaching upon the interests of the college. In the instant case, the student should be given the names of the witnesses against him and an oral or written report on the facts to which each witness testifies. He should also be given the opportunity to present to the Board, or

at least to an administrative official of the college, his own defense against the charges and to produce either oral testimony or written affidavits of witnesses in his behalf. If the hearing is not before the Board directly, the results and findings of the hearing should be presented in a report open to the student's inspection. If these rudimentary elements of fair play are followed in a case of misconduct of this particular type, we feel that the requirements of due process of law will have been fulfilled." Dixon v. Alabama State Board of Education, 294 F.2d 150, 158–159 (5th Cir.), cert. denied, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961).

This court cited the *Dixon* case with approval in Norton v. Discipline Committee of East Tenn. State Univ., 419 F.2d 195 (6th Cir. 1969), cert. denied, 399 U.S. 906, 90 S.Ct. 2191, 26 L.Ed.2d 562 (1970). *See also* Knight v. State Board of Education, 200 F.Supp. 174 (M.D.Tenn.1961)

Appellee, however, contends that appellant on this record should be held to have had a due process hearing before her expulsion, and hence, that she has no equitable basis for complaint about the disputed Ohio statute. This is, in essence, the view taken by the District Judge who denied the petition to convene a three-judge court and then dismissed the complaint on the merits. The District Judge accepted as true affidavits filed by appellee and found that appellant was accorded a hearing which provided due process under the circumstances involved. Appellee and the District Judge both point to the limited requirements for an administrative due process hearing in a school disciplinary case set forth in Madera v. Board of Education of City of New York, 386 F. 2d 778 (2d Cir. 1967), cert. denied, 390 U.S. 1028, 88 S.Ct. 1416, 20 L.Ed.2d 284 (1968).

In *Madera* the Second Circuit said:

"The issue is one of procedural 'due process' in its general sense, free from the 'specifics' of the Fifth and Sixth Amendments. What constitutes due process under any given set of circumstances must depend upon the nature of the proceeding involved and the rights that may possibly be affected by that proceeding. Cafeteria and Restaurant Workers Union v. McElroy, 367 U.S. 886, 895, 81 S. Ct. 1743, 6 L.Ed.2d 1230 (1961)." Madera v. Board of Education of City of New York, *supra* at 780.

Accepting these standards, the basic problem we have on this appeal is that appellant claims that she had no hearing before her expulsion and that the Ohio statute which appears to authorize expulsion before a hearing is a violation of federal due process.

■ Such allegations do in our view raise substantial federal questions. Whether her allegations are correct, of course, is not before us. Nor was it properly before the District Judge. The sufficiency of the complaint for three-judge jurisdictional purposes must be determined by the allegations of the bill of complaint and not by the way the facts turn out. Mosher v. City of Phoenix, 287 U.S. 29, 30, 53 S.Ct. 67, 77 L. Ed. 148 (1932); Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 854, 78 L.Ed. 1472 (1933); Tyler v. Russel, 410 F.2d 490 (10th Cir. 1969).

The Supreme Court in 1962 stated the function of the District Judge this way:

"We agree with the Court of Appeals that a three-judge court should have been convened in this case. When an application for a statutory three-judge court is addressed to a district court, the court's inquiry is appropriately limited to determining whether the constitutional question raised is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three-judge statute. Those criteria were assuredly met here, and the applicable jurisdictional statute therefore made it im-

permissible for a single judge to decide the merits of the case, either by granting or by withholding relief." Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 1296, 8 L.Ed.2d 794 (1962). (Footnote omitted.)

Of course, an attack upon a state statute as violative of the Federal Constitution calls for hearing and determination before a three-judge court. 28 U.S.C. §§ 2281, 2284 (1964).

In remand the first issue in this case (and possibly the only one which will need resolution, since this is a complaint seeking individual relief) will be whether or not appellant was prior to her expulsion given a hearing which met due process standards in the context of the fact situation involved. It may be quite possible to resolve this issue on a motion for summary judgment filed before the three-judge court. No motion for summary judgment has as yet been filed and, in any event, could not have been determined by the District Judge. His sole function on receiving this complaint was to determine whether or not its allegations raised a substantial federal question. If so, the determination of fact disputes and the determination of disputed constitutional issues becomes the responsibility of the three-judge court. The statute establishing the three-judge court system says in part:

"Any one of the three judges of the court may perform all functions, conduct all proceedings except the trial, and enter all orders required or permitted by the rules of civil procedure. A single judge shall not appoint a master or order a reference, or hear and determine any application for an interlocutory injunction or motion to vacate the same, or dismiss the action, or enter a summary or final judgment. The action of a single judge shall be reviewable by the full court at any time before final hearing." 28 U.S.C. § 2284 (1964).

We are not unaware that the Chief Judge of this court has very recently expressed this court's concern over the multiplication of three-judge court proceedings and has urged District Judges to scrutinize petitions for such courts with care. Jones v. Branigin, 433 F.2d 576 (6th Cir. 1970). Nonetheless, for the reasons already stated, we do not see how the designation of a three-judge court to determine this case can be avoided.

It may well be that on summary judgment motion before that court, or after a few minutes of sworn testimony on the issues presented here, this case will prove to be as frivolous as the District Judge felt it was. Obviously, however, the resolution of the dispute must be in the legally designated forum.

The dissent in this case sets forth the facts as they are alleged to be in affidavits filed by respondent. But there has been no hearing in this case; the facts recited are not conceded by plaintiff; and no motion for summary judgment has been filed in the court which has jurisdiction. We do not see how respondent's allegations can be held to deprive plaintiff of her right to have a determination of her charges and respondent's counter charges made in the legal forum provided by federal statute.

If, as some of us believe, the statutory mechanism currently established is needlessly expensive in judicial manpower, the cure lies in amendment of the three-judge statute—not in this court's ignoring its terms.

The judgment of the District Court is vacated and the case is remanded to the District Court for invocation of appointment of a three-judge court.

O'SULLIVAN, Senior Circuit Judge (dissenting).

I respectfully dissent. The opinion of my brother fails, as did the plaintiff's pleadings in the District Court, to disclose the facts which produced this now ponderous litigation. With much respect for an opposite view, I express my belief that a recital of its background facts will at once disclose that this is vexatious litigation—an unwarranted

imposition upon the District Court and upon this Court.

Here are the facts:

On October 20, 1969, Vanessa Calloway, then a student at East Technical High School in the City of Cleveland, Ohio, was discovered carrying a loaded .22 caliber revolver upon the school premises. She announced that it was her intention to shoot one or all of four named female students who, she said, had attempted to obtain money from her, or had otherwise abused her. A safety inspector, employed by the Cleveland Board of Education, discovered Vanessa's possession of the gun. He took possession of it and brought it and Vanessa to the office of an Administrative Assistant who was then in charge of East Technical High School. This official made inquiry as to the cause of Vanessa being brought to him. Vanessa acknowledged her possession of the loaded revolver and again expressed her intention to use it if she thought it necessary. Vanessa further disclosed to the Administrator that upon telling her mother of her troubles with the four named girls, her mother obtained and delivered to her the loaded revolver, with advice to use it to shoot all or such of the named girls as necessity required. After conferring with the Acting Principal of the high school, the Administrative Assistant advised Vanessa that she was suspended from school for ten days, pending an investigation. She was then escorted to her home by an Attendance Home Visitor employed by the Cleveland Public Schools.

On the same day, the mother of Vanessa—Inez Calloway—was given a full account of the affair. Thereupon, the mother stated that she had, without the knowledge of her employer, taken the gun from such employer and given it to her daughter with advice to use it if Vanessa deemed it necessary to do so.

Within the month preceding the above events a student at one of the Cleveland High Schools had, on the school premises, shot and killed another student. On a number of occasions guns had been taken from students who were carrying them on the premises of the Cleveland public schools.

A full report of the relevant events was given to Dr. Paul W. Briggs, Superintendent of the Cleveland Public Schools, who caused his own investigation to be made of the affair and on October 23, 1969, and pursuant to Ohio Revised Code, Section 3313.66, notified the parents of Vanessa that she was expelled. The following is the content of the notice:

"I regret to inform you that I find it necessary to expel your daughter, Vanessa Calloway, from the Cleveland Public Schools. This is being done under the statutory provisions of Section 3313.66 of the Ohio Revised Code.

"The reason for the expulsion is that Vanessa reported to East Technical High School on October 20th with a loaded .22 caliber revolver (serial #152571). Vanessa admitted that she brought the gun to school to use it against four students who had allegedly been threatening her.

"I am delivering this notification to you by way of personal service by one of the attendance workers in the Division of Attendance.

"I am complying with the law by sending a copy of this notice to the Clerk-Treasurer of the Cleveland Board of Education."

The mentioned Ohio statute provides as follows:

"3313.66 Suspension or expulsion.

The superintendent of schools of a city or exempted village, or the executive head of a local school district *may suspend a pupil from school not more than ten days.* Such superintendent or executive head *may expel a pupil from school.* Such superintendent or executive head shall within twenty-four hours after the time of expulsion, notify the parent or guardian of the child, and the clerk of the board of education in writing of such expulsion including the reasons therefor. *The pupil or the parent,* or guardian, or

custodian of a pupil so expelled *may appeal such action to the board of education at any meeting of the board and shall be permitted to be heard against the expulsion.* At the request of the pupil, or his parent, guardian, custodian, or attorney, the board may hold the hearing in executive session but may act upon the expulsion only at a public meeting. The board may, by a majority vote of its full membership, reinstate such pupil. No pupil shall be suspended or expelled from any school beyond the current semester." (Emphasis supplied.)

After such notice had been given, nothing was heard from Vanessa or her parents. On December 4, 1969, three lawyers identifying themselves as attorneys for Vanessa Calloway, met with the Director of Pupil Assignment for the Cleveland Public Schools. One of them was a Lyonel Jones who later appeared as one of the lawyers who commenced this litigation. These lawyers were advised that the Ohio statute provided for an appeal and that a hearing would be given to Vanessa if requested. They were told that such a hearing would be had before the Board of Education; that Vanessa could be represented by an attorney; that the Board of Education would provide for the presence at the hearing of any employees of the Board requested by Vanessa's counsel; that the Board's decision would be based only on the evidence presented at such hearing; that if requested a record of such hearing would be prepared and furnished to Vanessa or her counsel. No such hearing was ever requested by the Calloway family or any of their attorneys.

On January 26, 1970, the same Director of Pupil Assignment met with Vanessa Calloway, her parents, and one Snyder who identified himself as attor-

ney for Vanessa and her mother. At this meeting Vanessa was told that she could return to the Cleveland Public Schools. Her lawyer, Snyder, requested that Vanessa be permitted to attend the John Hay High School. He explained that this high school, because of its location and accessibility, was more convenient than East Technical High School, from which Vanessa had been expelled. Thereafter, on February 3, 1970, this same attorney, Snyder, who identified himself as being from the Legal Aid Society, advised the said Director of Pupil Assignment that the family of Vanessa Calloway had decided to accept the school authorities' "offer of an adjustment transfer to John Hay High School." Next day, February 4, 1970, the Director wrote to Vanessa's mother telling of his call from Legal Aid attorney Snyder, which letter concluded with the following:

"Will you please see that Vanessa returns to the Cleveland Public School System and enters John Hay High School on February 27, 1970?

"I sincerely hope that Vanessa will be happy and that her school experiences will be profitable in John Hay High School."

Notwithstanding the above transactions, and while attorney Snyder, of the Legal Aid Society, the Calloways and the Director of Pupil Assignment were apparently bringing the Calloway affair to a happy conclusion, no less than four other young lawyers of the Cleveland Legal Aid Society were busy preparing this lawsuit. Without any further approach to the school authorities, the product of their endeavors—the complaint before us—was filed in the United States District Court at Cleveland on January 22, 1970.[1]

The foregoing are the controlling facts,[2] but the complaint avoids fair dis-

---

1. This date is four days prior to the January 26 meeting between attorney Snyder (another Legal Aid Society lawyer) and the Director of Pupil Assignment which apparently brought the Calloway affair to an amicable conclusion. Can it be that

the other four Legal Aid lawyers wanted to try out this lawsuit, notwithstanding the amicable disposition of its subject matter?

2. These facts are set out in affidavits filed by defendant school officers in opposing

closure of them. The complaint recites that on October 23, 1969, Vanessa was expelled from school "for misconduct without first being accorded a hearing at which she could have a fair opportunity to defend herself against the said expulsion." The body of the complaint does not describe the involved misconduct, but in an affidavit attached to the complaint Vanessa says that "She was *suspended* * * * for *allegedly* carrying a concealed weapon in that school."

Procedurally the cause was presented to the District Court upon the plaintiff's application for preliminary injunction, for the convening of a three-judge court, and for a declaration that Section 3313.-66 of the Ohio Revised Code is unconstitutional. The plaintiff was seeking equitable relief. The complaint concluded with a prayer that the Court,

> "award the plaintiff such further relief as may be deemed *just and equitable*."

Plaintiff's failure to disclose the background facts makes it clear that these attorneys were seeking to have the Ohio school statute declared unconstitutional "on its face" and to have a three-judge court convened to consider the question *in vacuo*. In my view, a court of equity could appropriately have rebuffed this attempt by dismissing the case "out of hand." The defendants resisted the motions by filing answers to the complaint and by filing affidavits which recited the facts set out above. The District Judge considered the matter upon the case made by the pleadings before him. After careful review of the facts disclosed by such pleadings, he concluded:

> "The constitutionality of Ohio Revised Code § 3313.66 is not at issue in this case. The Court finds that plaintiff received an adequate hearing in conformity with due process standards. There is not a substantial federal question presented in this complaint. There appears, moreover, to be no oth-

er grounds upon which jurisdiction can be based. Accordingly, the Complaint must be dismissed."

I would affirm such decision for the following reasons:

1) Entertainment of an application for declaratory relief under Title 28, U.S.C. § 2201 is a matter within the discretion of the Court to whom it is addressed. In Public Service Commission of Utah v. Wycoff Co., 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952), the Supreme Court said:

> "The Declaratory Judgment Act * * 28 U.S.C. § 2201 * * * provides that in a case of *actual controversy* a competent court *may* 'declare the rights and other legal relations' of a party 'whether or not further relief is or could be sought.' This is an enabling Act, which confers a *discretion* on the courts rather than an absolute right upon the litigant." 344 U.S. at 241, 73 S.Ct. at 239.

Whatever the articulated reason for his action, the District Judge was correct in refusing to entertain this action.

2) I am satisfied that it was permissible for the District Judge to consider the facts disclosed by the affidavits filed in opposition to plaintiff's motions for an injunction and the convening of a three-judge court. My brothers correctly state the general rule that "the sufficiency of the complaint for three-judge jurisdictional purposes must be determined by the allegations of the bill of complaint and not by the way the facts turn out." Where as here, however, the complaint contrived to invoke the jurisdiction of a three-judge court by masking the true facts, the District Judge correctly went beyond the complaint to determine the real controversy and the jurisdiction of a three-judge court, which plaintiff had the burden of showing by well-pleaded facts. See Gibbs v. Buck, 307 U.S. 66, 72, 59 S.Ct. 725, 83 L.Ed. 1111, 1116 (1938); McNutt v.

---

plaintiff's motion for a preliminary injunction and for the convening of a three-judge court. No denial of their accuracy was made in opposing affidavit or pleading; neither do these attorneys suggest to us that they are otherwise than true.

General Motors Acceptance Corp., 298 U.S. 178, 184, 56 S.Ct. 780, 80 L.Ed. 1135, 1138 (1936); Spears v. Spears, 162 F.2d 345, 347–348 (6th Cir. 1947).

Rule 43(e) of the Federal Rules of Civil Procedure provides:

"(e) *Evidence on Motions.* When a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or depositions."

Upon his consideration of these facts, he properly concluded that "plaintiff received an adequate hearing in conformity with due process standards."

3) In Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 1296, 8 L.Ed.2d 794 (1962), the Supreme Court said:

"[T]he court's inquiry is appropriately limited to determining whether the constitutional question raised is substantial, whether the complaint at least formally alleges a basis for *equitable relief,* and whether the case presented otherwise comes within the requirements of the three-judge statute." (Emphasis supplied.)

The complaint filed did not "allege a basis for equitable relief."

"A declaratory judgment, like other forms of *equitable relief,* should be granted only as a matter of judicial discretion, exercise in the public interest." Eccles v. Peoples Bank, 333 U.S. 426, 431, 68 S.Ct. 641, 644, 92 L.Ed. 784, 789 (1948).

In my view, neither the public interest nor any principle of equity would be served by allowing these attorneys to further impose this case upon a court of equity.

4) My brothers' opinion suggests that a three-judge court be convened, which might consider, upon motion for summary judgment, the same facts which were before the District Judge in the form of affidavits, and that on such a proceeding "the case will prove to be as frivolous as the District Judge felt it was." To what avail the current cry for reform and the unburdening of an already overburdened federal court system if we are to indulge such wasteful formalism. Chief Judge Phillips' able discussion of the dangerous increase in these impositions on the federal courts is indeed applicable here. See Jones v. Branigin, 433 F.2d 576 (6th Cir. 1970). In California Water Service v. City of Redding, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323 (1938), the Supreme Court early forecast what Jones v. Branigin, finds has come to pass. I do not believe that equity should entertain frivolous use of the Declaratory Judgment Act, 28 U.S.C. § 2201, and routinely convene a three-judge court under § 2281 just to provide a forum for the useless legal jousting which plaintiff's attorneys desire. In Oklahoma Gas & Electric Co. v. Oklahoma Packing Co., 292 U.S. 386, 54 S.Ct. 732, 78 L.Ed. 1318 (1934), the Supreme Court said:

"The three-judge procedure is an extraordinary one, imposing a heavy burden on federal courts, with attendant expense and delay. That procedure, designed for a specific class of cases, sharply defined, should not be lightly extended. * * * The limitations of the statute would be defeated were it enough to keep three judges assembled that a plaintiff could resort *to a mere form of words in his complaint* alleging that the suit is one to restrain action of state officers, *with no support whatever in fact or law."* 292 U.S. 391, 54 S.Ct. 734, 78 L.Ed. 1322. (Emphasis supplied.)

In Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), the Supreme Court emphasized that declara-

tory relief must be obtained from the equity side of the court.

"In addition, the legislative history of the Federal Declaratory Judgment Act of 1934, 48 Stat. 955, as amended, 28 U.S.C. § 2201, showed that Congress had explicitly contemplated that the courts would decide to grant or withhold declaratory relief on the basis of *traditional equitable principles.* Accordingly the Court held that in an action for a declaratory judgment, 'the district court was as free as in any other suit in equity to grant or withhold the relief prayed, *upon equitable grounds."* (Emphasis supplied.)

This litigation has already used the time and talents of one of the judges and the staff of the United States District Court. In the appeal to us, three judges of this Court, maintained at government expense, aided by various attaches of this court, also provided at government expense, have given attention to what I believe is vexatious litigation. I think that it should end here without sending it back to convene three more judges to do what we can do now. See Green v. Board of Elections, 380 F. 2d 445, 449 (2d Cir. 1967); Heaney v. Allen, 425 F.2d 869, 872 (2d Cir. 1970).

An independent judiciary is essential to our free society. Such a judiciary will remain only so long as it respects the constitutional prerogatives of its coequals in the grand scheme of our government. If, however, we invite restraints by the ever-multiplying intrusion of our writs to control discharge of the functions of every school officer and others who have the responsibility for direction of local government, we will indeed invite reprisals, justly imposed upon us by our coequals. It is inconceivable to me that only by our leave can local school officers summarily suspend and expel a high school student who shows up at school with a loaded revolver and advises of her intention to use it.

I would affirm.