MCNAUGHTON, A MINOR, ET AL. *v.* CIRCLEVILLE BOARD OF
EDUCATION ET AL.

(No. 74-CI-519—Decided December 16, 1974.)

Common Pleas Court of Pickaway County.

*Mr. O. Charles Hosterman*, for plaintiffs.
*Mr. Allan Berger*, for defendants.

CLINE, J. The facts as presented by the plaintiffs together with those facts stipulated to be true may be summarized as follows:

The plaintiffs are six students of Circleville High School and members of the Stooge Club which is a club officially recognized by the high school and with Mr. Lawhorn, the assigned advisor. The constitution of the club required that all meetings of the club be held on school property at the call of the president of the club. The constitution of the club had no provision for initiation or hazing.

On the eleventh of November, 1974, several members of the Stooge Club including the plaintiffs held an initiation and hazing of the new members at the home of Scott Bowman where the initiates were struck with belts, made to eat onion, and some initiates were required to rub tabasco sauce on the faces of fellow initiates. One of the initiates had the tabasco sauce rubbed in his eye and was taken to the hospital and treated. The meeting was not called by the President and was not officially announced at school. Mr. Lawhorn, the club advisor, was not notified nor was he present at the initiation.

On the following day the parents of two of the initiates complained to the school principal by the telephone and recounted some of the events that occurred at the initiation.

The principal, Mr. Paul Sarchet, thereafter notified on November 12, 1974, each student to appear at his office where he was inquired of as to the truth of whether he was an active participant in the initiation and hazing held off school property. Each of the plaintiffs admitted to having been present at the initiation and taking some part in the initiation and hazing of new members of the club and admitted to his part in striking of students with belts or assisting in requiring initiates to place tabasco sauce on the face of fellow initiates and requiring initiates to eat onions.

Thereupon, on the 12th of November, 1974, each plaintiff was suspended for 3 days from school and the parents of each plaintiff except one, who was not available by telephone, were called by telephone and notified that the students would be coming home from school. A letter was written notifying the parents of the suspension and was deposited in the mail the same day.

A meeting of the Athletic Board, which was made up of the Superintendent, the Principal, and several of the

coaches, was held on Friday, November 15, 1974 and the Athletic Board voted to suspend the plaintiffs from any athletic activity for forty (40) days. The forty-day suspension is automatic upon a student's being suspended for any period. Several of the parents of the plaintiffs were present at the Athletic Board meeting where the events of the previous days were discussed and the action taken. Thereafter, the plaintiffs filed this action to enjoin the school from further enforcement of the suspension of athletic activities for the following reasons:

"Said disciplinary action is arbitrary and unreasonable as applied to plaintiffs for the following reasons: (a) Defendants failed to notify or otherwise apprise plaintiffs of the consequences of indulging in the activities engaged at the meeting of November 17, 1974, said activities being previously condoned, sanctioned, and encouraged by defendants; (b) That persons other than plaintiffs were present at this meeting engaging in the same or similar conduct, without receiving any disciplinary action from defendants; (c) That the application of said disciplinary action does not apply equally to all plaintiffs; (d) That the same or similar activities have occurred since the inception of the Stooge Club without disciplinary action having been taken or warning by defendants or their predecessors.

"Wherefore, Plaintiffs pray the court for a temporary and permanent order restraining and enjoining defendants from enforcing disciplinary action taken against plaintiffs; from taking any further disciplinary action in the future; and for an order requiring defendants to expunge and delete any reference to such disciplinary action from plaintiffs' school records."

The plaintiffs offered evidence that initiation proceedings had taken place during the past preceding years and claim that the action of the school officials in now enforcing the ban on such activities is arbitrary and capricious as to the plaintiff.

The plaintiffs in this proceeding admitted having taken part in the initiation but that their appearance before the principal did not amount to a hearing and that due process was not accorded.

At the close of the plaintiffs' case, the defendants moved this court to dismiss the action of the plaintiffs.

The legality of the suspension is governed by R. C. 3313.66 together with court decisions affecting that section. The constitutionality of that section has been raised before the 6th Circuit Court of Appeals for the United States, and for purposes of this hearing must be accepted as valid. R. C. 3313.66.

"The superintendent of schools of a city or exempted village, the executive head of a local school district, or the principal of a public school may suspend a pupil from school for not more than ten days. Such superintendent or executive head may expel a pupil from school. Such superintendent, executive head, or principal shall within twenty-four hours after the time of expulsion or suspension, notify the parent or guardian of the child, and the clerk of the board of education in writing of such expulsion, or suspension, including the reasons therefor. The pupil or the parent, or guardian, or custodian of a pupil so expelled may appeal such action to the board of education at any meeting of the board and shall be permitted to be heard against the expulsion. At the request of the pupil, or his parent, guardian, custodian, or attorney, the board may hold the hearing in executive session but may act upon the expulsion only at a public meeting. The board may, by a majority vote of its full membership, reinstate such pupil. No pupil shall be suspended or expelled from any school beyond the current semester."

The rights of a student are discussed in *Lopez v. Williams* (1973), 372 F. Supp. 1279, which sets out the rules of due process as applied to an expulsion from school where the safety of the school either as to persons or property is involved. This case, however does not involve the safety of persons or property at the time the action was taken but may be considered to affect the health of students at a future time.

"Since the decision in *Dixon v. Alabama State Board of Education* (5th Cir. 1961), 294 F. 2d 150, the lower federal courts have without exception recognized that a student has the due process right to notice and hearing prior

to expulsion or suspension from school for a substantial period of time. *Woods* v. *Wright* (5th Cir. 1964), 334 F. 2d 369; . . . *Norton* v. *Discipline Committee of East Tennessee State University* (6th Cir. 1969), 419 F. 2d 195, 200, . . . Although suspension from school for a short period of time as opposed to a lengthy suspension or expulsion is a lesser interference with the right to education, the due process clause of the Fourteenth Amendment still clouds the student. *Tate* v. *Board of Education of Jonesboro Arkansas*, 453 F. 2d at 979, *supra*; . . . No court faced with the question has held that the right to an education is not within the concept of 'liberty.' '' *Lopez* v. *Williams*, 372 F. Supp. 1279, at 1299.

''It is important to remember that even though the interference with the liberty of a right to education is limited, the student's right to be treated with procedural fairness prior to a deprivation of the right to an education is not lost. The magnitude of the deprivation affects the formality and comprehensiveness of the due process safeguards; it does not affect the basic fact that these safeguards shield the student from arbitrary or capricious interference with his right to education.'' *Lopez* v. *Williams*, 372 F. Supp. 1279, at 1299.

''Before a person is deprived of a protected interest, he must be afforded opportunity for some kind of a hearing, 'except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event' * * * it is fundamental that except in emergency situations (and this is not one) due process requires that when a State seeks to terminate (a protected) interest . . ., it must afford 'notice and opportunity for hearing appropriate to the nature of the case' before the termination becomes effective. . . . For the rare and extraordinary situations in which we have held that deprivation of a protected interest need not be preceded by opportunity for some kind of hearing. . . . '' *Lopez* v. *Williams*, 372 F. Supp. 1279, 1299, 1300.

''The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings. . . .

The constitutional requirement of opportunity for some form of hearing before deprivation of a protected interest, of course, does not depend upon such a narrow balancing process." *Lopez* v. *Williams*, 372 F. Supp. 1279, at 1300.

"The difference between expulsion and suspension becomes important only when the court confronts the question of what process is due to protect the Fourteenth Amendment liberty. . . . The court holds that the state created entitlement to an education is a liberty protected by the due process of the Fourteenth Amendment. . . . The court now turns to the more difficult question of what process is due a student before the State may deprive him of his right to an education by imposing a suspension not to exceed 10 days. . . . The primacy of the educator in the school has been unquestioned by the courts. The courts have consistently reaffirmed the right of school administrators to manage their school systems without interference from the courts, so long as the basic commands of the Constitution are honored . . . consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools." *Lopez* v. *Williams*, 372 F. Supp. 1279, at 1300.

"The courts have vigorously asserted the right, and indeed the duty of school administrators to prohibit student behavior which materially disrupts classwork, endangers property or interferes with the rights of other students. . . . General Order of Judicial Standards of Procedure and Substance in Review of Student Discipline in Tax Supported Institutions of Higher Learning, 45 F. R. D. 133, 141 (W. D. Mo. en banc 1968) . . . the student be afforded the minimum procedural process mandated by the Constitution." *Lopez* v. *Williams*, 372 F. Supp. 1279, at 1300, 1301.

"The nature of the due process protection of the right of education is dependent on the severity of the sanction. . . . When the sanction is a short suspension as opposed to a lengthy suspension or expulsion, more informal procedures may be adopted by school authorities who make the disciplinary determination . . . to suspend students for a short period without a hearing if an emergency situation requires the removal of the disruptive student from the school to restore an academic atmosphere. . . . The mini-

mum requirements of notice and a hearing prior to suspension, except in emergency situations, does not require inflexible procedures. Courts must be mindful not to require educators to follow specific or particular procedural frameworks. Due process is satisfied if the procedures are 'reasonably calculated to be fair to the student and lead to a reliable determination of the factual issues involved'. . . . School authorities must be given discretion within wide limits to find fact and assess their significance . . . there is less reason to accord school authorities as much discretion in fashioning procedures. However flexible the contours of due process may be in . . . . the ascertainment of the outer limits is a judicial function under the Fourteenth Amendment. Of course, school authorities must have some discretion in developing fair procedures. Hopefully, they will not assume that the minimum requirements of the Due Process Clause as determined by the Courts are all that they as school administrators, should determine to accord students as a matter of sound educational policy. . . . The Fourteenth Amendment due process requirements of notice in a hearing are 'nothing more than fair play'. . . . If school administrators follow procedures which result in a fair factual determination made after notice and an opportunity to defend against the charges of misconduct, then no matter how informal the procedure the minimum requirements of the due process clause of the Fourteenth Amendment of the Constitution of the United States.'' *Lopez* v. *Williams*, 372 F. Supp. 1279, at 1301, 1302.

The court adopted a standard in case of school disruption or malicious destruction of property (not present in this case) :

''The decisions which have dealt with the subject in the composite provide that at a minimum procedural fairness requires :

''1. Immediate removal of a student whose conduct disrupts the academic atmosphere of the school, endangers fellow students, teachers or school officials, or damages property.

''2. Immediate written notice to the student and parents of the reason(s) for the removal from school and the

proposed suspension should be given within 24 hours. ..

"3. Not later than 72 hours after the actual removal of the student from school, the student and his parents must be given an opportunity to be present at a hearing before a school administrator who will determine if a suspension should be imposed. . . .

"Such hearing, which is not a judicial proceeding, must provide at a minimum

"(a) Statements in support of the charge(s) against the student upon which the hearing is conducted.

"(b) Statements by the student and others in defense of the charge(s) and/or in mitigations or explanation of his conduct.

"(c) The administrator is not required to permit the presence of counsel or follow any prescribed judicial rules in conducting the hearing.

"(d) The administrator should, within 24 hours advise the student and his parents by letter of his decision and the reasons therefor." *Lopez* v. *William*, 372 F. Supp. 1279, at 1302.

The 6th Circuit Court of Appeals, in case involving suspension of a high school student, adopted the principle of *Dixon* v. *Alabama*, which involved the suspension of a college student.

In the *Calloway* case (*Calloway* v. *Briggs*, 443 F. 2d 296), a child was expelled pursuant to R. C. 3313.66. The case was considered in the first instance by the U. S. Court of Appeals, Sixth Circuit (which includes Ohio), where the court cited the *Dixon* case (*Dixon* v. *Alabama State Board of Education* [C. A. 5], 294 F. 2d 150, 158, 159, certiorari denied [1961], 368 U. S. 930, 82 S. Ct. 368, 7 L. Ed. 2d 193.) with approval in *Norton* v. *Discipline Committee of East. Tenn. State Univ.* (C. A. 6, 1969), 419 F. 2d 195, certiorari denied (1970), 399 U. S. 906, 90 S. Ct. 2191, 26 L. Ed. 2d 562.

The Sixth Circuit, U. S. Court of Appeals, quoted the *Dixon* case with approval as follows:

"For the guidance of the parties in the event of further proceedings, we state our views on the nature of the notice and hearing required by due process prior to expulsion from a state college or university. . ... The notice

should contain a statement of the specific charges and grounds which, if proven, would justify expulsion under the regulations of the Board of Education. The nature of the hearing should vary depending upon the circumstances of the particular case. . . . By its nature, a charge of misconduct, as opposed to a failure to meet the scholastic standards of the college, depends upon a collection of the facts concerning the charged misconduct, easily colored by the point of view of the witnesses. In such circumstances, a hearing which gives the Board or the administrative authorities of the college an opportunity to hear both sides in considerable detail is best suited to protect the rights of all involved. This is not to imply that a full-dress judicial hearing, with the right to cross-examine witnesses, is required. . . . Nevertheless, the rudiments of an adversary proceeding may be preserved without encroaching upon the interests of the college. In the instant case, the student should be given the names of the witnesses against him and an oral or written report on the facts to which each witness testifies. He should also be given the opportunity to present to the Board, or at least to an administrative official of the college, his own defense against the charges and to produce either oral testimony or written affidavits of witnesses in his behalf. . . . If these rudimentary elements of fair play are followed in a case of misconduct of this particular type, we feel that the requirements of due process of law will have been fulfilled." *Calloway* v. *Briggs*.

"The issue is one of procedural 'due process' in its general sense, free from the 'specifics' of the Fifth and Sixth Amendments. What constitutes due process under any given set of circumstances must depend upon the nature of the proceeding involved and the rights that may possibly be affected by that proceeding. *Cafeteria and Restaurant Workers Union* v. *McElroy*, 367 U. S. 886, 895, 81 S. Ct. 1743, 6 L. Ed. 2d 1230 (1961)." *Calloway* v. *Briggs*.

"Accepting these standards, the basic problem we have on this appeal is that appellant claims that she had no hearing before her expulsion and that the Ohio statute which appears to authorize expulsion before a hearing is a violation of federal due process. . . . When an application

for a statutory three-judge court is addressed to a district court, the court's inquiry is appropriately limited to determining whether the constitutional question raised is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three-judge statute.... In remand the first issue in this case (and possibly the only one which will need resolution, since this is a complaint seeking individual relief) will be whether or not appellant was prior to her expulsion given a hearing which met due process standards in the context of the fact situation involved.'' *Calloway* v. *Briggs*.

In this case "The lawyers were advised that the Ohio statute provided for an appeal and that a hearing would be given to Vanessa if requested. They were told that such a hearing would be had before the Board of Education; that Vanessa could be represented by an attorney; that the Board of Education would provide for the presence at the hearing of any employees of the Board requested by Vanessa's counsel; that the Board's decision would be based only on the evidence presented at such hearing; that if requested a record of such hearing would be prepared and furnished to Vanessa or her counsel. No such hearing was ever requested by the Calloway family or any of their attorneys.'' *Calloway* v. *Briggs*.

"Courts will not interfere with the exercise of discretion by school authorities, in the absence of an abuse of discretion or arbitrary, unreasonable or capricious action. ... Pursuant to Section 3313.66, Revised Code, a superintendent of schools may expel a pupil. The board of education, if requested, must give him or his parent or custodian a hearing. It may reinstate him by majority vote of its entire membership taken at a public meeting; if it does not do so, the expulsion stands.'' *State, ex rel. Humphrey*, v. *Adkins* (1969), 18 Ohio App. 2d 101.

"Absent an abuse of discretion or fraud or collusion, a court will not interfere with a board of education in its determination of any question which is within its discretion.'' *State, ex rel. Fleetwood*, v. *Bd. of Edn.* (1969), 20 Ohio App. 2d 154.

The questions involved in this case are whether the Common Pleas Court of Pickaway County has jurisdiction in this case; whether the proceedings held by the principal of Circleville High School constituted a hearing under the facts and circumstances in this case, so as to comply with due process as required by the United States Constitution; whether the plaintiffs are required to complete an appeal to the Board of Education prior to seeking relief in the courts; whether after construing all of the evidence offered by plaintiff, most favorably to the plaintiffs, the plaintiff would be entitled to the relief requested.

If the plaintiffs are not under the law entitled to the relief requested, then the court must sustain the motion of the defendants to dismiss the action.

The court finds that the present case did not involve destruction of property or safety of the personnel at Circleville High School; this case is within the jurisdiction of the Common Pleas Court of Pickaway County since it involves the constitutional rights of students at Circleville High School, Pickaway County, Ohio; that the proceedings in the principal's office was a hearing in compliance with minimal standards of due process; that the requirements of a more formal hearing for determination of facts was not involved because all the plaintiffs admitted having a part in an unauthorized activity and for which most of the plaintiffs originally knew suspension was involved if they were caught. This court expresses no opinion as to whether the judgment and disposition made by the principal was proper under the circumstances since the court will not review a discretionary action taken by the school officials. The decision of the principal to suspend the students for three days was an exercise of discretion and a letter was properly mailed to the parents of the plaintiffs within 24 hours, although the parents did not receive the letter within 24 hours. The statute requires only posting of the letter within 24 hours of action taken.

It may well be that had the students denied taking part in the initiation, a different action would have been taken by the principal and indeed different and additional action

would have been required. In this case, the matter was treated as though they pleaded guilty to the complaint.

The school is not guilty of laches in failing to stop the initiations or in failing to take action during preceding years since the school officials had no knowledge of the students' actions in prior years. (No estoppel.)

The discretion of the principal in disciplinary matters is properly appealable to the school board as provided by R. C. 3313.66.

For future guidance, it should be pointed out that any hearing held in accordance with R. C. 3313.66 should comply with one of two procedures as suggested by the federal courts. "Judiciary View on School Suspension," by Judge Don J. Young, 27 Juvenile Justice (Feb. 1976), No. 1, page 19.

First, if the circumstances require immediate action and the matter is of serious nature, then the student and parent should be notified of the suspension; a hearing date to be held before the principal or superintendent should be set within 72 hours; the charges should be reduced to writing, and the notice should inform the student and parent that they may request the presence of school personnel at the hearing; the notice should be accompanied by copies of any statements or a resume of the expected testimony. After the hearing the principal could determine and take appropriate action. If more extreme action were deemed proper, he should refer the matter to the superintendent, the Board of Education or the courts.

If no emergency exists and the student denies the charge, action should be withheld pending a hearing unless necessity requires immediate suspension as hereabove set forth.

If the matter is not of a serious nature, less formal requirements may be used to resolve the question except that procedural due process would require a fundamental fairness in all cases. Fair treatment would require that the student understand that he was present at a hearing to determine the truth or falsity of a certain complaint and that he could admit or deny the truth of the same and that every

reasonable effort would be used to arrive at a determination of the truth or falsity of the charge and the school would assist the student in proving any denial.

In the instant case, the school officials elected to initiate immediate action and when the plaintiff-students were confronted with the complaint, all readily admitted their involvement. They did, however, believe that prior action of the school had unofficially sanctioned such activities.

This presents a case which is more often true in some homes than at school, namely that within the school community everyone but the school officials seemed to know what was going on. As usual this condition existed because neither parents nor the student wished to inform the school authorities of the facts. Both the students and parents now ask this court to charge the school with approval of such activity. Greater surveillance, supervision, and cooperation are required of the school and parents involved.

The court must find that construing all of the evidence most favorable to the plaintiffs, the action taken by the school officials was neither arbitrary nor capricious; that minimal due process was accorded the plaintiffs under the given set of facts and circumstances; that the school officials did not violate the equal application of the laws requirement since all known violators received similar treatment; that the school had not waived their right to enforce the rules against such initiations because neither students nor parents informed the officials of such activity prior to 1974; the officials had informed both students and parents of the possibility of action being taken in such a case. The motion of the defendants for a dismissal of this action is therefore granted.

Participation in athletics is discretionary with the school board, coaches, and other officials as designated by the Board of Education.*

*Motion granted.*

---

*It should be noted that the United States Supreme Court has held that it was unconstitutional to apply the Ohio statute where no notice was given either before or after the hearing as a violation of due process. To this the scrivener would agree and feels that that decision does no harm to the above decision. *Goss* v. *Lopez*, 42 L. Ed. 2d 725, 95 S. Ct. 729.