## SAMUELS ET AL. *v.* MACKELL, DISTRICT ATTORNEY OF QUEENS COUNTY, ET AL.

No. 7. Argued April 1, 1969—Reargued April 29 and November 16, 1970—Decided February 23, 1971*

BLACK, J., delivered the opinion of the Court, in which BURGER, C. J., and HARLAN, STEWART, and BLACKMUN, JJ., joined. DOUGLAS, J., filed a concurring opinion, *post*, p. 74. STEWART, J., filed a concurring opinion, in which HARLAN, J., joined, *ante*, p. 54. BRENNAN, J., filed an opinion concurring in the result, in which WHITE and MARSHALL, JJ., joined, *post*, p. 75.

*Victor Rabinowitz* argued the cause for appellants in No. 7 on the original argument and on the rearguments. With him on the briefs were *Leonard B. Boudin, Michael Standard,* and *Dorian Bowman. Eleanor Jackson Piel*

---

*Together with No. 9, *Fernandez* v. *Mackell, District Attorney of Queens County, et al.,* also on appeal from the same court.

argued the cause and filed briefs for appellant in No. 9 on the original argument and on the rearguments.

*Frederick J. Ludwig* argued the cause for appellee Mackell in both cases on the original argument and on the rearguments. With him on the briefs was *Thomas J. Mackell, pro se. Maria L. Marcus,* Assistant Attorney General, argued the cause for appellee Attorney General of New York in both cases on the original argument and on the rearguments. With her on the briefs were *Louis J. Lefkowitz,* Attorney General, *pro se, Samuel A. Hirshowitz,* First Assistant Attorney General, and *Hillel Hoffman,* Assistant Attorney General.

MR. JUSTICE BLACK delivered the opinion of the Court.

The appellants in these two cases were all indicted in a New York state court on charges of criminal anarchy, in violation of §§ 160, 161, 163, and 580 (1) of the New York Penal Law.[1] They later filed these actions in federal district court,[2] alleging (1) that the anarchy statute was void for vagueness in violation of due process, and an abridgment of free speech, press, and assembly, in violation of the First and Fourteenth Amendments; (2) that the anarchy statute had been pre-empted by federal law; and (3) that the New York laws under which the grand jury had been drawn violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment because they disqualified from jury service any member of the community who did not own real or personal property of the value of at least $250, and be-

---

[1] These provisions were repealed effective September 1, 1967, and a new criminal anarchy statute, in somewhat different form, took effect on the same date.

[2] The complaint in No. 7 was filed in the Southern District of New York. The complaint in No. 9 was originally filed in the Eastern District, but was later transferred to the Southern District by consent.

cause the laws furnished no definite standards for determining how jurors were to be selected. Appellants charged that trial of these indictments in state courts would harass them, and cause them to suffer irreparable damages, and they therefore prayed that the state courts should be enjoined from further proceedings. In the alternative, appellants asked the District Court to enter a declaratory judgment to the effect that the challenged state laws were unconstitutional and void on the same grounds. The three-judge court, convened pursuant to 28 U. S. C. § 2284, held that the New York criminal anarchy law was constitutional as it had been construed by the New York courts and held that the complaints should therefore be dismissed. 288 F. Supp. 348 (SDNY 1968).[3]

In No. 2, *Younger* v. *Harris, ante,* p. 37, we today decided on facts very similar to the facts in these cases that a United States District Court could not issue an injunction to stay proceedings pending in a state criminal court at the time the federal suit was begun. This was because it did not appear from the record that the plaintiffs would suffer immediate irreparable injury in accord with the rule set out in *Douglas* v. *City of Jeannette,* 319 U. S. 157 (1943), and many other cases. Since in the present case there is likewise no sufficient showing in the record that the plaintiffs have suffered or would suffer irreparable injury, our decision in the *Younger* case is dispositive of the prayers for injunctions

---

[3] The court also said that even if its view on the merits was wrong, relief should be withheld because the statutes being challenged were no longer in effect. With respect to the plaintiffs' challenge to the selection of the grand jury, the District Court held, in reliance on *Douglas* v. *City of Jeannette,* 319 U. S. 157 (1943), that this claim could be effectively presented to the New York courts and therefore did not call for federal intervention at this stage.

here. The plaintiffs in the present cases also included in their complaints an alternative prayer for a declaratory judgment, but for the reasons indicated below, we hold that this alternative prayer does not require a different result, and that under the circumstances of these cases, the plaintiffs were not entitled to federal relief, declaratory or injunctive. Accordingly we affirm the judgment of the District Court, although not for the reasons given in that court's opinion.

In our opinion in the *Younger* case, we set out in detail the historical and practical basis for the settled doctrine of equity that a federal court should not enjoin a state criminal prosecution begun prior to the institution of the federal suit except in very unusual situations, where necessary to prevent immediate irreparable injury. The question presented here is whether under ordinary circumstances the same considerations that require the withholding of injunctive relief will make declaratory relief equally inappropriate. The question is not, however, a novel one. It was presented and fully considered by this Court in *Great Lakes Co.* v. *Huffman,* 319 U. S. 293 (1943). We find the reasoning of this Court in the *Great Lakes* case fully persuasive and think that its holding is controlling here.

In the *Great Lakes* case several employers had brought suit against a Louisiana state official, seeking a declaratory judgment that the State's unemployment compensation law, which required the employers to make contributions to a state compensation fund, was unconstitutional. The lower courts had dismissed the complaint on the ground that the challenged law was constitutional. This Court affirmed the dismissal, "but solely on the ground that, in the appropriate exercise of the court's discretion, relief by way of a declaratory judgment should have been denied without consideration

of the merits." *Id.*, at 301–302. The Court, in a unanimous opinion written by Mr. Chief Justice Stone, noted first that under long-settled principles of equity, the federal courts could not have enjoined the Louisiana official from collecting the state tax at issue there unless, as was not true in that case, there was no adequate remedy available in the courts of the State. This judicial doctrine had been approved by Congress in the then-recent Tax Injunction Act of 1937, 50 Stat. 738, now 28 U. S. C. § 1341. Although the declaratory judgment sought by the plaintiffs was a statutory remedy rather than a traditional form of equitable relief, the Court made clear that a suit for declaratory judgment was nevertheless "essentially an equitable cause of action," and was "analogous to the equity jurisdiction in suits *quia timet* or for a decree quieting title." 319 U. S., at 300. In addition, the legislative history of the Federal Declaratory Judgment Act of 1934, 48 Stat. 955, as amended, 28 U. S. C. § 2201, showed that Congress had explicitly contemplated that the courts would decide to grant or withhold declaratory relief on the basis of traditional equitable principles. Accordingly, the Court held that in an action for a declaratory judgment, "the district court was as free as in any other suit in equity to grant or withhold the relief prayed, upon equitable grounds." 319 U. S., at 300. The Court's application of these principles to the specific problem of declaratory judgments relating to the collection of state taxes is worth quoting in full, because it bears so directly on the problem before us in the present case:

> "The earlier refusal of federal courts of equity to interfere with the collection of state taxes unless the threatened injury to the taxpayer is one for which the state courts afford no adequate remedy, and the confirmation of that practice by Congress,

have an important bearing upon the appropriate use of the declaratory judgment procedure by the federal courts as a means of adjudicating the validity of state taxes.

"It is true that the Act of Congress speaks only of suits 'to enjoin, suspend, or restrain the assessment, levy, or collection of any tax' imposed by state law, and that the declaratory judgment procedure may be, and in this case was, used only to procure a determination of the rights of the parties, without an injunction or other coercive relief. It is also true that that procedure may in every practical sense operate to suspend collection of the state taxes until the litigation is ended. But we find it unnecessary to inquire whether the words of the statute may be so construed as to prohibit a declaration by federal courts concerning the invalidity of a state tax. For we are of the opinion that those considerations which have led federal courts of equity to refuse to enjoin the collection of state taxes, save in exceptional cases, require a like restraint in the use of the declaratory judgment procedure." 319 U. S., at 299.

The continuing validity of the Court's holding in the *Great Lakes* case has been repeatedly recognized and reaffirmed by this Court. See, *e. g., Macauley* v. *Waterman S. S. Corp.,* 327 U. S. 540, 545 n. 4 (1946); *Ott* v. *Mississippi Barge Line,* 336 U. S. 169, 175 (1949); *Public Serv. Comm'n* v. *Wycoff Co.,* 344 U. S. 237, 253 (1952) (DOUGLAS, J., dissenting); *Allegheny County* v. *Mashuda Co.,* 360 U. S. 185, 189 (1959); *Enochs* v. *Williams Packing Co.,* 370 U. S. 1, 8 (1962). Although we have found no case in this Court dealing with the application of this doctrine to cases in which the relief sought affects state criminal prosecutions rather than

state tax collections, we can perceive no relevant difference between the two situations with respect to the limited question whether, in cases where the criminal proceeding was begun prior to the federal civil suit, the propriety of declaratory and injunctive relief should be judged by essentially the same standards. In both situations deeply rooted and long-settled principles of equity have narrowly restricted the scope for federal intervention, and ordinarily a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the long-standing policy limiting injunctions was designed to avoid. This is true for at least two reasons. In the first place, the Declaratory Judgment Act provides that after a declaratory judgment is issued the district court may enforce it by granting "[f]urther necessary or proper relief," 28 U. S. C. § 2202, and therefore a declaratory judgment issued while state proceedings are pending might serve as the basis for a subsequent injunction against those proceedings to "protect or effectuate" the declaratory judgment, 28 U. S. C. § 2283, and thus result in a clearly improper interference with the state proceedings. Secondly, even if the declaratory judgment is not used as a basis for actually issuing an injunction, the declaratory relief alone has virtually the same practical impact as a formal injunction would. As we said in the *Wycoff* case, 344 U. S., at 247:

> "Is the declaration contemplated here to be *res judicata,* so that the [state court] cannot hear evidence and decide any matter for itself? If so, the federal court has virtually lifted the case out of the State [court] before it could be heard. If not, the federal judgment serves no useful purpose as a final determination of rights."

See also *H. J. Heinz Co.* v. *Owens,* 189 F. 2d 505, 508–509 (CA9 1951). We therefore hold that, in cases where the state criminal prosecution was begun prior to the federal suit, the same equitable principles relevant to the propriety of an injunction must be taken into consideration by federal district courts in determining whether to issue a declaratory judgment, and that where an injunction would be impermissible under these principles, declaratory relief should ordinarily be denied as well.

We do not mean to suggest that a declaratory judgment should never be issued in cases of this type if it has been concluded that injunctive relief would be improper. There may be unusual circumstances in which an injunction might be withheld because, despite a plaintiff's strong claim for relief under the established standards, the injunctive remedy seemed particularly intrusive or offensive; in such a situation, a declaratory judgment might be appropriate and might not be contrary to the basic equitable doctrines governing the availability of relief. Ordinarily, however, the practical effect of the two forms of relief will be virtually identical, and the basic policy against federal interference with pending state criminal prosecutions will be frustrated as much by a declaratory judgment as it would be by an injunction.

For the reasons we have stated, we hold that the court below erred in proceeding to a consideration of the merits of the New York criminal anarchy law. Here, as in the *Great Lakes* case, the judgment dismissing the complaint was based on an adjudication that the statutes challenged here are constitutional and is thus in effect a declaratory judgment. We affirm the judgment dismissing the complaint, but solely on the ground that, in the appropriate exercise of the court's discretion, relief by way of declaratory judgment should have been denied without consideration of the merits. We, of course, ex-

press no views on the propriety of declaratory relief when no state proceeding is pending at the time the federal suit is begun.

*Affirmed.*

[For concurring opinion of MR. JUSTICE STEWART, see *ante,* p. 54.]

MR. JUSTICE DOUGLAS, concurring.

The same New York statutes on anarchy that were sustained in *Gitlow* v. *New York,* 268 U. S. 652, are involved in these cases. It was in that case that Mr. Justice Holmes, with whom Mr. Justice Brandeis concurred, said in dissent:

> "It is said that this manifesto was more than a theory, that it was an incitement. Every idea is an incitement. It offers itself for belief and if believed it is acted on unless some other belief outweighs it or some failure of energy stifles the movement at its birth. The only difference between the expression of an opinion and an incitement in the narrower sense is the speaker's enthusiasm for the result. Eloquence may set fire to reason. But whatever may be thought of the redundant discourse before us it had no chance of starting a present conflagration. If in the long run the beliefs expressed in proletarian dictatorship are destined to be accepted by the dominant forces of the community, the only meaning of free speech is that they should be given their chance and have their way."

In *Gitlow* the only overt acts were advocacy of overthrow and publication of the writings that contained the advocacy. *Id.,* at 655. *Gitlow* and its progeny, including *Whitney* v. *California,* 274 U. S. 357, went into the discard with our decision in *Brandenburg* v. *Ohio,*

395 U. S. 444. In that case the indictment charged advocating terrorism "by word of mouth" as a method of political reform and assembly for the purpose of such advocacy. We held that neither advocacy nor assembly in order to advocate political action may be made punishable.

*Brandenburg,* however, is of no help to these appellants. For while some of the counts embrace only advocacy or acts which fall within its penumbra, still others are in the field of activities far removed from the protection of the First Amendment. There is a question concerning some of the overt acts—whether, as I asked in my dissent in *Epton* v. *New York,* 390 U. S. 29, 30, a constitutionally protected right such as speech or assembly may be used as an overt act in furtherance of a conspiracy. But other overt acts relate to the acquisition of weapons, gunpowder, and the like, and the storing of gasoline to start fires. Persuasion by such means plainly has no First Amendment protection.

It therefore cannot be said that the cases against Samuels and Fernandez are palpably unconstitutional. It is for the state courts by sifting out the chaff from the charges through motions to strike, instructions to the jury, and other procedural devices to preserve such First Amendment rights as may be involved here. Certainly violence has no sanctuary in the First Amendment, and the use of weapons, gunpowder, and gasoline may not constitutionally masquerade under the guise of "advocacy."

MR. JUSTICE BRENNAN, with whom MR. JUSTICE WHITE and MR. JUSTICE MARSHALL join, concurring in the result.

I agree that the judgment of the District Court should be affirmed. All the appellants had been indicted for violation of the New York Criminal Anarchy Law before

their suit in federal court was filed. They have not alleged facts amounting to bad-faith harassment. Therefore, neither a declaratory judgment nor an injunction would be proper. *Perez* v. *Ledesma, post,* p. 93 (separate opinion of BRENNAN, J.).