**Thomas Guerin WOODRUFF et al.,
Plaintiffs,**

v.

**WEST VIRGINIA BOARD OF REGENTS,
a corporation, et al., Defendants.**

Civ. A. No. 2773.

United States District Court,
S. D. West Virginia,
Huntington Division.

July 16, 1971.

Harvey M. Cohen and Joseph G. Martorella, Barboursville, W. Va., for plaintiffs.

Cletus B. Hanley, Deputy Atty. Gen., Joseph E. Hodgson, Asst. Atty. Gen., Charleston, W. Va. (Chauncey H. Browning, Jr., Atty. Gen. of West Virginia, on brief), for defendants.

Before BOREMAN, Circuit Judge, and CHRISTIE and WIDENER, District Judges.

BOREMAN, Circuit Judge:

Plaintiffs brought this action in the United States District Court for the Southern District of West Virginia seeking a declaratory judgment of unconstitutionality, and an injunction against the enforcement, of certain specified portions of the "Policies, Rules, and Regulations Regarding Student Rights, Responsibilities, and Conduct in West Virginia State Universities and Colleges" (hereafter Student Code), promulgated and adopted by the West Virginia Board of Regents (hereafter Regents), effective August 7, 1970. Plaintiffs sought and were permitted to maintain this action as a class action pursuant to Rule 23, Fed.R.Civ.P., representing the class of students at Marshall University who, it is claimed, will be deprived of rights and privileges and immunities guaranteed by the Constitutions of the United States of America and of the State of West Virginia by the enforcement of the challenged provisions of the Student Code. Named as defendants were the Regents, the officers and members of Regents, the chancellor and acting president of Marshall University, and the chief administrative officer of Marshall University.

Plaintiffs requested that a three-judge court be convened pursuant to 28

U.S.C. §§ 2281 and 2284 to consider the constitutionality of the Student Code. District Judge Christie requested that such a three-judge court be legally constituted and the Chief Judge of the United States Court of Appeals for the Fourth Circuit issued an appropriate order pursuant to the request.

Plaintiffs moved for a temporary restraining order enjoining defendants from enforcing the Student Code which motion was denied following a hearing.

Before this duly constituted three-judge court, plaintiffs allege first, that the Regents did not have the authority to promulgate and adopt the Student Code. In the alternative, they urge that the following provisions of the Student Code are constitutionally impermissible for the following reasons:

(1) Section 3.01 of the Student Code provides:

"Freedom of Expression and Assembly—The student enjoys the essential freedoms of scholarship and inquiry central to all institutions of higher education. In exercising these freedoms, the student has certain rights and responsibilities, including, but not limited to, the following: * * * (d) To listen to any person through the invitation of organizations recognized by the institution."

Section 3.02 provides:

"Freedom of Association—Students may organize whatever associations they deem desirable, and are entitled to affiliate with any group or organization for which they qualify for membership. However, institutional recognition of student organizations shall be limited to those whose purposes comport with the educational mission of the institution as defined by the Board of Regents and the institution."

Plaintiffs allege that these two sections violate the First and Fourteenth Amendments in that they grant the Regents and university officials overbroad discretion in limiting institutional recognition of student organizations and there-by exerting prior censorship over those who may address students on campus since only institutionally recognized organizations may invite speakers.

(2) Section 4.01 of the Student Code provides in pertinent part:

"Conduct Required in General—All students at the institutions are subject to, and are required to comply with, observe, and obey the following: (a) The laws of the United States. (b) The laws of the State of West Virginia. (c) Local city, county, and municipal ordinances. * * * "

Plaintiffs claimed that this section violates the Fifth and Sixth Amendments to the extent that the university may punish violators thereof, but in their reply brief they concede that this issue should not at this time be adjudicated because there has been no actual enforcement of this section and since there is no First Amendment right here involved. Thus, plaintiffs have expressly abandoned their challenge to Section 4.-01 in the present action.

(3) Section 5.03 of the Student Code provides:

"Powers, Authority, and Duties of the Presidents: Promulgation of Institutional Regulations for Student Discipline—The president of each institution shall have authority and responsibility, subject to the control of the Board of Regents, for the discipline of all students at the institution of which he is president.

"The president, with the advice of faculty and students and subject to the control of the Board of Regents, shall develop, *promulgate*, and use disciplinary regulations and channels at each institution not inconsistent with the policies, rules and regulations of the Board of Regents. All disciplinary regulations and channels now in existence and operation at any such institution shall remain in effect and shall be used until modified, except as such regulations and channels shall be deemed modified and amended by

these policies, rules, and regulations." (Emphasis added.)

Plaintiffs originally contended that this section violates the Fourteenth Amendment because disciplinary regulations might be adopted without having to be published. However, plaintiffs concede in their reply brief that the word "promulgate" is equivalent to the word "publish" and they abandon their challenge to this section.

(4) Section 5.05 provides:

"Powers, Authority, and Duties of the Presidents: Public Use of Institution Property or Facilities, and Restrictions Imposed—Subject to the control of the Board of Regents, notwithstanding any rule, regulation, policy, or express or implied permission for the use of, or presence in or on, the property or facilities of any institution, any person who (a) is not a student presently registered for current classes or course work at the particular institution, or, is not an employee of the Board of Regents currently on duty at the institution; and (b) by his conduct or his speech or expressions causes, or, in the opinion of the president of the institution or his delegate of authority, may be reasonably expected to cause harm to persons, property, or facilities, or disruption of, or interference with, any activity of the institution, is no longer authorized to be in or on the property or facilities of the institution. In such instance, the president of such institution or his delegate of authority, shall cause such person to be ejected from, kept off, and kept out of the property and facilities of the institution. The president or his delegate of authority may take whatever legal or institutional action is necessary to effectuate this authority."

Plaintiffs claim this section violates the First and Fourteenth Amendments in that it grants overbroad discretion to the Regents and the president of the university in determining who may be allowed to speak at the university.

(5) Section 5.06 provides:

"Powers, Authority, and Duties of the Presidents: Use of Institutional Property or Facilities: Activities Which Interfere With, Disrupt, or Inhibit Institutional Operations—The exercise by any person or persons of rights of speech, assembly, press or other expression in such a fashion as to be inappropriate, under all the circumstances, as to time, place or nature of expression, or as to interfere with access to, or use of, the institution's property, facilities, activities, programs or operations by those properly and regularly using the same is expressly prohibited, any rule, regulation, or permission, express or implied, notwithstanding."

Plaintiffs claim that this section violates the First and Fourteenth Amendments in that it grants overbroad discretion to prohibit the exercise of rights of speech, assembly, press or other expression which officials simply find to have been in their opinion "inappropriate."

(6) Section 5.07 provides:

"Powers, Authority, and Duties of the Presidents: Limitations of Assembly and Student Use of Institution Property or Facilities—Subject to the control of the Board of Regents, when, in the judgment of the president of any institution, an assembly is not in the best interests of the institution or the individuals concerned, such president or his delegate of authority shall prohibit such assembly and shall take measures to prevent harm to persons, property, or facilities, or to prevent interference with or disruption of activities, as may be necessary in the circumstances or may be reasonably expected to come into existence."

Plaintiffs claim that this section violates the First and Fourteenth Amendments in that it grants overbroad discretion to the Regents and the president of the university to prohibit assemblies.

(7) Section 6.04 (not quoted here due to length) violates the Sixth and Fourteenth Amendments because it does

not provide that students may have counsel present at any disciplinary proceeding against them. However, in their reply brief plaintiffs abandon this issue in the present action because there has been no application of this regulation and since there is no First Amendment right here involved.

Thus, in the present posture of this case the only rules and regulations challenged as facially unconstitutional are 5.05, 5.06, 5.07 and 3.01(d) when combined with 3.02. All of these provisions are attacked on the ground that they violate plaintiffs' First and Fourteenth Amendment rights by establishing an impermissibly broad restraint upon the exercise of First Amendment rights of free speech, press, expression and assembly.

The defendants have moved for dismissal of the action, or in the alternative for summary judgment, primarily because the action is premature, i. e., that none of the challenged Code provisions had been enforced nor had there been threats of enforcement of any of the provisions against any of the plaintiffs and, consequently, there was no basis for injunctive relief and no justiciable controversy presented for declaratory judgment.

Examination of the pleadings and record reveals that the complaint does not allege that any of the specific provisions of the Code of Conduct, attacked as invalid by the plaintiffs, have been enforced or are threatened to be enforced against any of them and the testimony adduced by the plaintiffs in support of their motion for a temporary restraining order fails to point to any instance where any of the defendants had invoked or threatened to invoke any provision of the Code against any of the plaintiffs. Therefore, in view of the absence of any specific allegation in the complaint and the lack of any proof that the challenged rules had been invoked or are threatened to be invoked against any of the plaintiffs, we agree with the defendants that no basis exists for injunctive relief and that no justiciable controversy is presented for declaratory judgment. Our conclusion is based primarily upon the Supreme Court's recent decision in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971),[1] in which the Court found no genuine controversy as to three of the plaintiffs who were in a position analogous to that in which plaintiffs in the instant case find themselves. While finding a genuine controversy as to one of the plaintiffs (Harris) who was in fact being prosecuted under the challenged statute, the *Younger* Court refused to consider the appeals of three of the plaintiffs since there was no pending or threatened enforcement against them of the challenged statute. These three plaintiffs merely alleged that they felt "inhibited" in the exercise of their First Amendment rights because they might possibly be prosecuted under the statute there attacked. The Court disposed of their appeals by stating:

"If these three had alleged that they would be prosecuted for the conduct they planned to engage in, and if the District Court had found this allegation to be true * * * then a genuine controversy might be said to exist. But here [these three] appellees do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible. They claim the right to bring this suit solely because, in the language of their complaint, they 'feel inhibited.' We do not think this allegation, even if true, is sufficient to bring the equitable jurisdiction of the federal courts into play to enjoin a pending state prosecution. * * * [P]ersons hav-

---

1. *See also* five related cases decided on the same day by the Supreme Court: Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688; Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696; Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701; Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781; and Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792.

ing no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs in such cases." 401 U.S. 42, 91 S.Ct. 749.

Our decision is further bolstered by the Supreme Court's holding in Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L. Ed.2d 696 (1971), involving a federal court suit challenging the validity of numerous Illinois statutes. A three-judge district court validated all of the challenged statutes, except one dealing with mob action and a subsection of another dealing with intimidation. These two provisions were declared unconstitutional and their enforcement was enjoined by the district court. State officials did not appeal the decision as to the mob action statute, but did appeal the declaration of unconstitutionality of, and the injunction granted against the enforcement of, the subsection of the intimidation statute. None of the plaintiffs in *Boyle* had been prosecuted, charged or arrested under the challenged statute which was before the Court, nor had there been any specific threat by any city, county or state official to enforce the statute against any of the plaintiffs. The Court held that there had been no valid claim presented and stated:

"[I]t appears from the allegations that those who originally brought this suit made a search of state statutes and city ordinances with a view to picking out certain ones that they thought might possibly be used by the authorities as devices for bad-faith prosecutions against them. * * * [T]he normal course of state criminal prosecutions cannot be disrupted or blocked on the basis of charges which in the last analysis amount to nothing more than speculation about the future." 401 U.S. 81, 91 S.Ct. 760.

It would appear that plaintiffs in the instant case did approximately what was done by the plaintiffs in *Boyle, i. e.,* they searched the Student Code in this case (statutes in *Boyle*) for any provi-

sion which might at some time in the indefinite future be used improperly, oppressively or in bad faith to prevent the exercise of First Amendment rights. We find no genuine controversy.

Plaintiffs claim that the case of Dombrowski v. Pfister, 380 U.S. 479, 85 S. Ct. 1116, 14 L.Ed.2d 22 (1965), indicates that a federal court may consider and determine the constitutionality, and issue an injunction against the enforcement, of a challenged state statute or regulation if it is alleged that the challenged provision is overbroad and thereby has a chilling effect upon the exercise of First Amendment rights. Standing alone, some language in *Dombrowski* is capable of such an interpretation, as the Court stated:

"We hold the abstention doctrine is inappropriate for cases such as the present one where * * * statutes are justifiably attacked on their face as abridging free expression, or as applied for the purpose of discouraging protected activities." 380 U.S. 489–490, 85 S.Ct. 1122.

The Court went on, to hold that ordinary defenses which might be asserted during a criminal prosecution would not provide an adequate remedy at law where continuous or threatened bad faith prosecutions would have a "chilling effect" upon the exercise of First Amendment rights.

However, the Supreme Court severely limited the broad language of *Dombrowski*, in its recent decision in Younger v. Harris, 401 U.S. at 52, 91 S.Ct. at 754, where the Court stated:

"Procedures for testing the constitutionality of a statute 'on its face' in the manner apparently contemplated by *Dombrowski*, and for then enjoining all action to enforce the statute until the State can obtain court approval for a modified version, are fundamentally at odds with the function of the federal courts in our constitutional plan. The power and duty of the judiciary to declare laws unconstitutional is in the final analysis derived from its responsibility for re-

solving concrete disputes brought before the courts for decision; a statute apparently governing a dispute cannot be applied by judges, consistently with their obligations under the Supremacy Clause, when such an application of the statute would conflict with the Constitution. ·[Citation omitted.] But this vital responsibility, broad as it is, does not amount to an unlimited power to survey the statute books and pass judgment on laws before the courts are called upon to enforce them. Ever since the Constitutional Convention rejected a proposal for having members of the Supreme Court render advice concerning pending legislation it has been clear that, even when suits of this kind involve a 'case or controversy' sufficient to satisfy the requirements of Article III of the Constitution, the task of analyzing a proposed statute, pinpointing its deficiencies and requiring correction of these deficiencies before the statute is put into effect, is rarely if ever an appropriate task for the judiciary. The combination of the relative remoteness of the controversy, the impact on the legislative process of the relief sought, and above all the speculative and amorphous nature of the required line-by-line analysis of detailed statutes [citations omitted] ordinarily results in a kind of case that is wholly unsatisfactory for deciding constitutional questions, whichever way they might be decided.

\* \* \* \* \* \*

[W]e hold that the *Dombrowski* decision should not be regarded as having upset the settled doctrines that have always confined very narrowly the availability of injunctive relief against state criminal prosecutions. We do not think that opinion stands for the proposition that a federal court can properly enjoin enforcement of a statute solely on the basis of a showing that the statute 'on its face' abridges First Amendment rights. There may, of course, be extraordinary circumstances in which the nec-

essary irreparable injury can be shown even in the absence of the usual prerequisites of bad faith and harassment. \* \* \* It is sufficient for purposes of the present case to hold, as we do, that the possible unconstitutionality of a statute 'on its face' does not in itself justify an injunction against good-faith attempts to enforce it, and that appellee Harris has failed to make any showing of bad faith, harassment, or any other unusual circumstance that would call for equitable relief." (401 U.S. 52–54, 91 S.Ct. 754–755.)

We are fully aware that in *Younger* there was a pending state prosecution under the challenged statute and that the Court expressed no view as to circumstances under which federal courts may act when there is no state proceeding pending at the time the federal suit is begun. But in *Dombrowski*, as in the instant case, there was no pending state proceeding, and it is clear that the availability of federal relief in *Dombrowski*, as interpreted in *Younger*, was predicated upon substantial allegations of irreparable harm which established "a basis for equitable relief under the long-established standards." Younger v. Harris, 401 U.S. at 50, 91 S.Ct. at 753.

■ Thus, the Court in *Younger* made it clear that federal courts should abstain from exercising their equity jurisdiction to enjoin the enforcement of state statutes in the absence of a showing of bad faith enforcement or other extraordinary circumstances constituting irreparable harm to plaintiffs if enforcement of such statutes is not enjoined. Plaintiffs in the instant case are unable to allege even a threat of *good-faith* enforcement of the Student Code provisions, much less *bad-faith* enforcement or other circumstances constituting irreparable harm which would justify or call for the exercise by this court of its equity jurisdiction. Accordingly, we decline the plaintiff's invitation to do so.

The foregoing principle is, in the usual case, applied in the context of an

attack on a state criminal statute but the instant case should not be held distinguishable on this ground. Intimately involved is the problem of comity, or "sensitivity to the legitimate interests of both State and National Governments." Younger v. Harris, 401 U.S. at 44, 91 S.Ct. at 750.

 We think a stronger case for federal judicial abstention is presented in a case of this type involving rules and regulations governing state colleges and universities than is involved in most other types of state statutes or regulations. In an era of often violent dissent and demonstration on campuses, we think it is obvious that state education officials and local officials of educational institutions must have somewhat broad powers to attempt to forestall violence under circumstances where violence might reasonably be anticipated. Thus, without expressing any opinion as to the constitutionality of the particular Student Code provisions here under attack,[2] we simply note that a state has a most significant interest in protecting lives and property at state colleges and universities and that statutes and regulations directed toward this end should not be overturned by federal courts unless the federal interest to be protected clearly overrides the state interest. As the Supreme Court said in *Younger*, 401 U.S. at 51–52, 91 S.Ct. at 754:

"Just as the incidental 'chilling effect' of such statutes does not automatically render them unconstitutional, so the chilling effect that admittedly can result from the very existence of certain laws on the statute books does not in itself justify prohibiting the State from carrying out the important and necessary task of enforcing these laws against socially harmful conduct that the State believes in good faith to be

punishable under its laws and the Constitution."

 In the absence of a genuine controversy and in the absence of a showing or allegation of harassment or a threat of bad-faith application and enforcement of the Student Code provisions or other extraordinary circumstances constituting irreparable harm to plaintiffs sufficient to invoke this court's equity jurisdiction and to override the abstention doctrine, the defendants' motion to dismiss plaintiffs' complaint will be granted. An appropriate order will be entered.

2. In Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), it is pointed out that while there may be unusual circumstances which might warrant declaratory judgment even though an injunction is denied the same equitable principles relevant to the propriety of an injunction must be taken into consideration by federal district courts in determining whether to issue a declaratory judgment; and, where an injunction would be impermissible under these principles declaratory relief should ordinarily likewise be denied.