Isadore SCHUMAN, and I. Schuman Industries, Inc.

v.

H. Arnold MULLER, M. D., Secretary, Pennsylvania Department of Health, Edward G. Biester, Jr., Attorney General, Jack B. Ogun, R. Ph., Director, Division of Drugs, Devices and Cosmetics, Department of Health, Commonwealth of Pennsylvania.

Civ. A. No. 79–4321.

United States District Court, E. D. Pennsylvania.

March 3, 1980.

Alan L. Director, Philadelphia, Pa., for plaintiffs.

Robert E. Kelly, Deputy Atty. Gen., Pennsylvania Dept. of Justice, Harrisburg, Pa., for defendants.

OPINION

LUONGO, District Judge.

The Pennsylvania Generic Drug Act (Act), 35 Pa.Stat.Ann. §§ 960.1–.7 (Purdon 1977), has as its objective the delivery of prescription drugs to consumers at the lowest possible cost. *See generally id.* § 960.1. To this end, the Act authorizes a pharmacist to substitute a less expensive generically equivalent drug for the brand name drug prescribed if the prescription specifically permits substitution and the purchaser acquiesces. *See generally id.* § 960.3(A). The Act, however, limits the generic drugs that may be substituted to those drugs listed in the formulary developed by the Pennsylvania Department of Health. *See generally id.* § 960.3(A), (F).

This action, filed on November 29, 1979, by a pharmacist and his retail drug chain, challenges the constitutionality of the generic drug law. Plaintiffs allege, *inter alia,* that the definition of "generically equivalent drug" in section 960.2 of the Act is unconstitutionally vague; that the determination of equivalence by the state Secretary of Health and the resultant omission from or inclusion of certain drugs on the state drug formulary is arbitrary and capricious; that the exception in section 960.6(C) for hospital pharmacies who have developed their own formularies denies plaintiffs equal protection of the law; that Congress

has, through the Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301–392 (1976 & Supp. II 1978), which authorizes the FDA to publish a national formulary, preempted state regulation in this area; and that including in the formulary distributors named by manufacturers of approved drugs while excluding therefrom distributors of the identical product not named by the manufacturers creates a de facto monopoly.

Plaintiffs presently seek a preliminary injunction against enforcement of the Act. At the hearing on plaintiffs' motion for preliminary relief, I inquired whether plaintiffs' voluntary agreement to comply with the Act (properly termed an assurance of voluntary compliance), which had been executed on October 31, 1979, and filed with the Montgomery County court of common pleas, implicated the abstention principles of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny. Plaintiffs requested time to brief the question, and I afforded both parties the opportunity to submit additional memoranda on this threshold issue. After careful consideration of the arguments advanced in those memoranda, I conclude that the *Younger* doctrine counsels against the exercise of jurisdiction in this case.

Plaintiff Schuman, a licensed pharmacist, is the president and sole shareholder of plaintiff corporation, I. Schuman Industries, Inc., which is engaged in the retail distribution and sale of pharmaceutical products in the commonwealth. Complaint (Doc. No. 1) ¶¶ 3–4. Sometime in the latter part of 1979, the Pennsylvania Bureau of Consumer Protection conducted an investigation into plaintiffs' business practices. That investigation revealed *inter alia* that plaintiffs were dispensing as generic equivalents drugs not listed in the Pennsylvania drug formulary. *Id.*, Exhibit A at 2–3. As a corrective measure, the Commonwealth agreed to accept an assurance of voluntary compliance from plaintiffs, rather than file a civil suit seeking an injunction against future violations. *Id.*, Exhibit A at 3. *Compare* 73 Pa.Stat.Ann. § 201–4 (Purdon Supp.1979–1980) (injunction against prohibited acts) *with id.* § 201–5 (assurance of voluntary compliance). By executing the assurance, plaintiffs agreed to comply with the Act in future, although they did not admit any past violation or wrongdoing. Complaint (Doc. No. 1), Exhibit A at 5. The assurance was filed with the Court of Common Pleas for Montgomery County on October 31, 1979, and by the terms of the agreement, that court retains "jurisdiction over the subject matter of this Assurance and over Respondents for the purpose of enforcement of this Assurance pursuant to the Act." *Id.*, Exhibit A, ¶ F at 4. The agreement also provides that "breach of any or all of the terms of this Assurance of Voluntary Compliance shall be sufficient warrant for the Commonwealth of Pennsylvania to petition the Court of Common Pleas of Montgomery County to assess civil penalties and to order any other equitable relief which the Court deems necessary or proper . . . ." *Id.*, Exhibit A at 5.

Defendants urge that the strand of the abstention doctrine rooted in *Younger v. Harris, supra*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, dictates dismissal of the instant action. *Younger* and its companion case, *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), preclude a federal district court from issuing either an injunction against enforcement of a state statute or a declaration of the statute's invalidity when a state criminal prosecution is pending against the federal plaintiff, absent a showing of harassment or bad faith on the part of state officials, or great and immediate irreparable injury to the federal plaintiff. Later cases have extended *Younger* abstention to pending civil proceedings brought to vindicate important state interests. *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (public nuisance statute); *accord, Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (proceeding under Texas Family Code to remove abused children from parental custody); *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (civil attachment proceeding to recover welfare payments fraudulently received); *Juidice v. Vail*, 430 U.S.

327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (state contempt proceedings).

Plaintiffs argue that the *Younger* doctrine is inapplicable to the case at bar because there is no enforcement action currently pending in state court. Indeed, they contend that inasmuch as no formal pleadings against them were ever filed by the Attorney General, there was never any action pending against them to trigger *Younger* abstention. Downplaying the provision in the assurance of voluntary compliance that vests continuing jurisdiction in the court of common pleas, plaintiffs suggest that the assurance signaled both the beginning and the end of the matter. They aver that their conduct presently conforms to the requirements of the generic drug law. Proceeding from this premise, they argue that the state court's jurisdiction is, at best, a technicality because there is no ongoing illegal conduct to precipitate further action in state court. According to plaintiffs, the state court's retention of jurisdiction is relevant only to demonstrate plaintiffs' dilemma—that they have clearly been threatened with sanctions for violating the generic drug law and have only two alternatives: (1) they comply with the terms of the assurance, thereby compromising their constitutional rights, or (2) they risk the imposition of sanctions by violating the terms of the assurance and the generic drug law, and attempt to vindicate their constitutional rights through the ensuing state court process.

Plaintiffs' contention that they need not violate the law to test their constitutional claims finds support in *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) (Brennan, J.), which approved a federal court action for declaratory relief where there was no pending state prosecution and where the federal plaintiff demonstrated a genuine threat of prosecution under the challenged statute. *Steffel* was subsequently reinforced in *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45

L.Ed.2d 648 (1975) (Rehnquist, J.). In *Doran*, the Court not only recognized the right of two proprietors, who had been threatened with enforcement of an allegedly unconstitutional ordinance but against whom no prosecutions were pending, to seek federal declaratory relief, but also upheld the grant of a preliminary injunction against enforcement of the ordinance.[1] Plaintiffs argue that they are in the same posture as the plaintiffs in *Steffel* and *Doran*. I disagree. The assurance of voluntary compliance makes the critical difference here and defeats the attempted analogy. Had plaintiffs resorted to the federal courts at the first hint of state enforcement, their argument would be much more tenable. The fact remains, however, that they did not do so, but sought instead to defuse the threat of state sanctions by executing the assurance of voluntary compliance.

Plaintiffs are correct in their assertion that there is presently no action "pending" against them in the same sense as the actions were pending in *Younger* and *Samuels v. Mackell, supra*. And defendants acknowledge as much. Defendants emphasize, however, that the pendency of an action in state court is not determinative; they argue that the crucial consideration is whether the federal suit will annul the results of the state court process.

Defendants ground their argument in *Huffman v. Pursue, Ltd., supra*, 420 U.S. 592, 607–11, 95 S.Ct. 1200, 1209–12, 43 L.Ed.2d 482. There, a state nuisance proceeding had resulted in a judgment against the federal plaintiff and in an order closing plaintiff's theater for one year. *Id.* at 598, 95 S.Ct. at 1205. Rather than appeal the state court judgment, the theater owner filed an action in federal court for injunctive and declaratory relief. The plaintiff in *Huffman* had argued that *Younger* principles were not implicated because the state proceeding had ended prior to the commencement of the federal action. The

---

1. Invoking the principles of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), the *Doran*

Court denied relief to a third proprietor whose violation of the ordinance after the federal action had been filed instigated a criminal proceeding in state court.

Court responded, however, that federal intervention at the appellate stage was just as disruptive of the state's interests as was the situation in *Younger*. Characterizing the plaintiff's suit as an attempt to substitute the federal court for the state appellate court, the *Huffman* Court refused to permit the plaintiff to bypass its state appellate remedies. *Id.* at 608–09, 95 S.Ct. at 1210–11.

I recognize that *Huffman* is not wholly apposite to the instant action because plaintiffs' respective postures vis-a-vis the states' enforcement mechanisms differ. In *Huffman*, the federal plaintiff had actually litigated its constitutional claim and had lost, whereas plaintiffs here have never raised their constitutional challenge in state court, having chosen instead to enter into the assurance of voluntary compliance. It is, however, precisely this latter point—plaintiffs' voluntary agreement to comply with the generic drug law, together with the implications of filing that agreement in the court of common pleas—that likens this case to *Huffman* and brings it within the *Younger* prohibition. Here, as in *Huffman*, the force of state process has a present direct and inhibiting impact upon plaintiffs.

That the Commonwealth's investigation into plaintiffs' retail drug business never ripened into litigation is unimportant. What is decisive here is that plaintiffs voluntarily submitted themselves to the jurisdiction of the court of common pleas by executing the assurance of compliance. I disagree with plaintiffs' assertion that the assurance began and ended the matter. Even though no formal pleadings were ever filed, the assurance is, in my view, much in the nature of a consent decree. And like a consent decree, the assurance imposes upon plaintiffs a continuing obligation, subject to judicial sanction, to conform their actions to the terms of their agreement.

The fact that the assurance continues in full force and effect distinguishes the instant action from the situation in the arguably applicable *Wooley v. Maynard*, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977). The plaintiff in *Wooley*, who had been convicted three times under a New Hampshire statute for obscuring the state motto on his license plate, succeeded in securing from a three-judge district court an injunction against further enforcement of the statute. In affirming the grant of relief and approving the lower court's exercise of jurisdiction under the circumstances, the Court noted that the relief requested was wholly prospective and would in no way "annul any collateral effects" flowing from the state convictions. *Id.* at 711, 97 S.Ct. at 1433.

Such is not the case here. Quite clearly, a present determination of the validity of the generic drug law would directly affect plaintiffs' obligations under the assurance of voluntary compliance entered in the common pleas court. Indeed, the relief requested by plaintiffs would completely vitiate that agreement. This intervention into a matter over which a state court has continuing jurisdiction is plainly the kind of evil that *Younger* abstention is intended to forestall.

Because plaintiffs so obviously seek to obviate the effects of the state process, *Younger* requires that I dismiss the action unless plaintiffs come within one of the recognized exceptions to the doctrine. I conclude that they do not. First, there is simply no evidence that the investigation into plaintiffs' business operations and the subsequent securing of the assurance of voluntary compliance were the result of bad faith or harassment. Second, the statute is not so " 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it' " as to warrant the exercise of jurisdiction here. *Younger v. Harris, supra,* 401 U.S. at 53–54, 91 S.Ct. at 755 (citation omitted). Third, plaintiffs have made no showing that they would be foreclosed from raising their constitutional claims in an attack on the validity of the assurance in the court of common pleas. Finally, plaintiffs have failed to demonstrate the great and immediate irreparable injury that would justify this court's

intrusion into what is, under the circumstances, a state prerogative. I will enter an appropriate order.