Robert H. SWAN, Plaintiff,

v.

William J. CLINTON, et al., Defendants.

Civil Action No. 96–763 RMU.

United States District Court, District of Columbia.

June 21, 1996.

Richard Kennon Willard, Steptoe & Johnson, LLP, Washington, DC, for Robert H. Swan.

Karen Stewart, U.S. Department of Justice, Civil Division, Washington, DC, for William J. Clinton, Robert J. Nash, Karl T. Hoyle.

### Memorandum Opinion and Order Granting Defendants' Motion for Summary Judgment

URBINA, District Judge.

### I. Background

On April 23, 1996, Mr. Robert H. Swan filed a motion for a preliminary injunction seeking that this court require the President of the United States, William J. Clinton to reinstate him as a member of the National Credit Union Administration (NCUA) Board. Mr. Swan further sought an injunction that would prevent the President from removing him from his position as a member of the NCUA Board. Pursuant to Fed.R.Civ.P. 65(a)(2), the court consolidated the motion for a preliminary injunction with the trial on the merits. The parties have since filed cross-motions for summary judgment.

The following facts are uncontroverted by the parties. The Federal Credit Union Act, Pub.L. No. 73–467, 48 Stat. 1216 (June 26, 1934), authorized federal charters and federal regulation and supervision of credit unions. The Act, as amended and codified, created "an independent agency to be known as the National Credit Union Administration." 12 U.S.C. Sections 1751–1795K. Congress vested the power to manage the NCUA with the NCUA Board. 12 U.S.C. Section 1752a(a).

The NCUA Board promulgates rules and regulations necessary to supervise and regulate federal credit unions. 12 U.S.C. Section 1752a(d). The NCUA Board is composed of three members appointed by the President, with the advice and consent of the Senate, to staggered, six-year terms. 12 U.S.C. Section 1752a(b). "A member may continue to serve as such after the expiration of said member's term until a successor has qualified." 12 U.S.C. Section 1752a(c).

On April 5, 1990, Mr. Swan was appointed as a member of the NCUA Board by President George Bush. After the expiration of his term of office, the plaintiff continued to serve on the NCUA Board in a holdover capacity, pursuant to 12 U.S.C. Section 1752a(c). By letter dated April 8, 1996, Mr. Nash, Assistant to the President, informed Mr. Swan that President Clinton had decided to terminate his service on the NCUA Board. Mr. Swan's termination became effective on April 9, 1996. Subsequently, Mr. Hoyle, Executive Director of the NCUA, ordered Mr. Swan to vacate his office at the NCUA. The United States Senate adjourned its session from March 29, 1996, until April 15, 1996. On April 12, 1996, the President issued a recess appointment to Ms. Yolanda Wheat; she succeeded Mr. Swan as a member of the NCUA Board. Mr. Swan subsequently initiated this action to require the President to reinstate him and to enjoin the defendants from removing him as a member of the NCUA Board.

## II. Analysis [1]

### A. Summary Judgment

■ Fed.R.Civ.P. 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." When the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Crain v. Board of Police Comm'rs of Metro. Police Dep't,* 920 F.2d 1402, 1405–

1406 (8th Cir.1990). Such issues include matters turning on statutory interpretation. *Edwards v. Aguillard,* 482 U.S. 578, 594–597, 107 S.Ct. 2573, 2583–2585, 96 L.Ed.2d 510 (1987). Presently, there are no material facts in dispute. Rather, the issues to be resolved are strictly legal ones. The court must determine whether President Clinton lawfully removed Mr. Swan from the NCUA Board. For the reasons set forth below, the court concludes that injunctive relief against the President is inappropriate. Having thus concluded, the court need not determine whether the President validly exercised his recess appointment power by replacing Mr. Swan with Ms. Wheat.

### B. Injunctive Relief

■ Although injunctive relief against executive officials, such as cabinet-level officials, is within the court's spectrum of discretion, a district court's "grant of injunctive relief against the President himself is extraordinary, and should ... raise judicial eyebrows." *Franklin v. Massachusetts,* 505 U.S. 788, 802, 112 S.Ct. 2767, 2776, 120 L.Ed.2d 636 (1992) (*citing Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153 (1952)). In general, courts have no jurisdiction to enjoin the President in the performance of his official duties. *Mississippi v. Johnson,* 4 Wall. 475, 501, 18 L.Ed. 437 (1866). There are, however, two narrow contexts in which the courts may have the authority to enjoin the President. The President may be subject to a subpoena to provide information relevant to an ongoing criminal prosecution. *See United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). In addition, the Supreme Court has left open the question of whether the President may be subject to an injunction requiring him to perform a purely ministerial duty. *Mississippi v. Johnson,* 4 Wall., at 498–499; *see also NTEU v. Nixon,* 492 F.2d 587 (D.C.Cir.1974) (holding that an injunction could be issued against the President to require the performance of a purely

---

1. In their opposition to Mr. Swan's motion for a preliminary injunction, the defendants challenged the court's jurisdiction over this matter. The defendants, however, did not raise this argument in their motion for summary judgment and

thus seem to have abandoned it. The court, however, has independently assessed the issue, and concludes that jurisdiction lies pursuant to 28 U.S.C. Section 1331 and Section 1361.

ministerial duty imposed upon the President by the express terms of the applicable statutes). The court must therefore determine whether injunctive relief against the President is available to the plaintiff, and if not, whether the plaintiff's alleged injuries are nonetheless redressable in some fashion, such as through declaratory relief. *Franklin v. Massachusetts*, 505 U.S. at 803, 112 S.Ct. at 2776–2777.

▪ The plaintiff has not demonstrated that the President violated a ministerial duty.[2] A ministerial duty "is one in respect to which nothing is left to discretion. It is a simple, definite duty, arising under conditions admitted or proved to exist and imposed by law." *Mississippi v. Johnson*, 4 Wall. 475, 498, 18 L.Ed. 437 (1866). Mandamus is the vehicle pursuant to which a court compels the performance of a ministerial duty. *Wilbur v. United States*, 281 U.S. 206, 218, 50 S.Ct. 320, 324, 74 L.Ed. 809 (1930). However, the duty to be enforced must be so plainly prescribed as to constitute a positive command. *Id.* at 218–219, 50 S.Ct. at 324–325. "The law must not only authorize the demanded action, but require it; the duty must be clear and undisputable." *13th Regional Corp. v. Department of Interior*, 654 F.2d 758, 760 (D.C.Cir.1980) (*citing United States ex rel. McLennan v. Wilbur*, 283 U.S. 414, 51 S.Ct. 502, 75 L.Ed. 1148 (1931)). Where the duty, however, "is not thus plainly prescribed but depends upon a statute ... the construction or application of which is not free from doubt, it is regarded as involving the character of judgment or discretion which cannot be controlled by mandamus." *Id.* (internal citations omitted). The court

has carefully reviewed the NCUA statute and has found no express restriction on the President's authority to remove members of the NCUA Board.

Moreover, the court is not persuaded a restriction should be inferred. "When Congress decides purposefully to enact legislation restricting or regulating presidential action, it must make its intent clear. The Supreme Court has recognized that 'in traditionally sensitive areas, such as legislation affecting the federal balance, the requirement of clear statement assures that the legislature has in fact faced, and intended to bring into issue, the critical matters involved in decision.'" *Armstrong v. Bush*, 924 F.2d 282, 289 (D.C.Cir.1991) (*quoting United States v. Bass*, 404 U.S. 336, 349, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1971)).

Congress has neither explicitly nor implicitly constrained the President's authority to remove NCUA Board members.[3] As a result, the court must ascertain what legal significance it should attach to Congress' silence on this matter. *Wiener v. United States*, 357 U.S. 349, 352, 78 S.Ct. 1275, 1277–1278, 2 L.Ed.2d 1377 (1958). The Supreme Court has made clear that the most salient concern in removal cases is that the President's exercise of his "executive power" and his constitutional duty to "take care that the laws be faithfully executed" under Article II not be infringed upon. *Morrison v. Olson*, 487 U.S. 654, 689–690, 108 S.Ct. 2597, 2618–2619, 101 L.Ed.2d 569 (1988). The court's emphasis should therefore not be entirely placed on whether the official in question is categorized as one who is "purely executive." *Id.* at 689, 108 S.Ct. at 2618.[4] Plaintiff, for

---

2. The court expresses no opinion as to whether the President can be required to perform a purely ministerial duty since the plaintiff has failed to demonstrate that such a duty presently exists.

3. The Supreme Court has rejected attempts by Congress to share in the President's ability to remove officials who perform executive functions. In *Myers v. United States*, 272 U.S. 52, 47 S.Ct. 21, 71 L.Ed. 160 (1926), the Court held that the President had the power to remove a postmaster of the first class without the advice and consent of the Senate as required by the act of Congress. In *Bowsher v. Synar*, 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986), the Court held that it was not consistent with the separa-

tion of powers for Congress to pass a statute that authorized a government official who is removable only by Congress to perform executive functions.

4. The Supreme Court has itself acknowledged the difficulty that inheres in a court's ability to determine whether an agency performs "executive" or "quasi-legislative" functions. *Morrison*, 487 U.S. at 689, 108 S.Ct. at 2618. (internal citations omitted). *See Humphrey's Executor v. United States*, 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611 (1935) (holding that the Federal Trade Commission's powers were not "purely" executive, but were "quasi-legislative or quasi-judicial."); *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct.

his part, would have the court infer a duty on the part of the President requiring him not to remove an NCUA Board member serving in a holdover capacity absent good cause. A court should, however, be hesitant to infer a restriction upon the President's removal power where none has been explicitly set forth by Congress and where board members have not been explicitly endowed with any tenure protection.[5]

Moreover, the present case differs from those in which the President's removal power has been constrained by the courts. For instance, in *Wiener v. United States,* the Supreme Court inferred a removal restriction. It thus rejected the President's attempt to remove a Commissioner of the War Claims Commission "merely because he wanted his own appointees on [the] Commission," *id.* at 356, 78 S.Ct. at 1279,[6] and therefore inferred a removal restriction. Commissioners were appointed by the President, with the advice and consent of the Senate, but Congress made no provision for the removal of the Commissioners. The Commissioners were entrusted by Congress with adjudicatory powers that were to be exercised entirely free from congressional or executive control. As a result, "Congress did not wish to hang over the Commission the Damocles' sword of removal by the President for no reason other than that he preferred to have on that Commission men of his own choosing." *Id.* In *Morrison,* the Supreme Court upheld an *express* limitation on the President's ability to remove an independent counsel under the Ethics in Government Act. Under the Act, an independent counsel could only be removed for "good cause." *Id.* at 686, 108 S.Ct. at 2616–2617. Unlike Mr. Swan, however, the independent counsel in

*Morrison* lacked policymaking or significant administrative authority. *Id.* at 691, 108 S.Ct. at 2619.[7]

The functions of the NCUA Board are substantially different from those of the War Claims Commission. The War Claims Commission's *raison d'etre* was to adjudicate claims in a manner similar to an Article III court. *Wiener v. United States,* 357 U.S. at 350, 355, 78 S.Ct. at 1276–1277, 1279. The NCUA, on the other hand, performs a wide variety of policy-making and administrative functions. The NCUA Board is charged with prescribing rules and regulations for the administration of federal credit unions; it can grant credit union charters; it can suspend or revoke the charter of any federal credit union or place the same in involuntary liquidation; it can investigate and report problems relating to the ability of obtaining credit at reasonable rates; it can pursue counseling programs to serve the poor; and it can conduct studies designed to promote the effective operation of credit unions. *See* 12 U.S.C. Section 1766. These functions are more properly characterized as executive functions rather than judicial ones.

The NCUA Board does perform certain adjudicatory functions. Specifically, it is authorized to adjudicate issues relevant to the exercise of its authority; to terminate the insured status of a credit union; to issue cease and desist orders; to remove or suspend credit union officials from office; and to asses civil money penalties. 12 U.S.C. Section 1786(b), (f), (g), (i), (k). However, the NCUA Board's decisions are subject to judicial review. 12 U.S.C. Section 1786(j). In contrast, the War Claims Commission's decisions were not subject to further administra-

---

612, 46 L.Ed.2d 659 (1976) (holding that the Federal Election Commission's functions are "administrative," and "more legislative and judicial in nature"); *Bowsher v. Synar,* 478 U.S. 714, 730, 106 S.Ct. 3181, 3189–3190, 92 L.Ed.2d 583 (1986) (holding that the functions of the Comptroller General were "executive" in nature). As a result, the Court has sought to minimize the importance of such labels. *Morrison,* 487 U.S. at 689, 108 S.Ct. at 2618.

5. In fact, the NCUA statute expressly provides for the replacement of an NCUA Board member upon the expiration of his term. 12 U.S.C. Sec-

tion 1752a(c) prohibits the appointment of a NCUA Board member to succeed himself.

6. The Commission's function was to receive and adjudicate certain claims for compensation from those who had suffered personal injury or property damage at the hands of the enemy during World War II.

7. In the present case, Congress did not delineate an express limitation on the President's removal power and so *Morrison* is inapplicable to the court's analysis.

tive or judicial review. More importantly, the Commissioners were given adjudicatory powers that were to be exercised free from executive control. Congress, however, did not similarly insulate the NCUA from executive control. *See* S.Rep. No. 91–518, 91st Cong., 2d Sess. (1970), *reprinted in* 1970 U.S.C.C.A.N. 2479, 2480. In fact, the NCUA was established "in the executive branch of the Government." Pub.L. No. 91–206 Section 3, 82 Stat. 49, 50 (1970). Furthermore, the NCUA is managed by a single Administrator who serves at the pleasure of the President. Pub.L. No. 91–206 Section 3, 82 Stat. 49, 50 (1970). Consequently, the court declines to infer a restriction upon the President's power to remove NCUA Board members where none was expressly provided for by Congress.[8]

### C. Declaratory Relief

Having concluded that injunctive relief cannot be issued against the President, the court must now determine whether the plaintiff's purported injury may nevertheless be redressable in some fashion. Specifically, the plaintiff seeks declaratory relief against the President and the other two inviduals involved in Mr. Swan's removal: Mr. Nash, Assistant to the President, and Mr. Hoyle, Executive Director of the NCUA.[9] Mr. Swan was removed by the President, and as such, only relief against the President can redress his alleged injury. The court, however, declines the plaintiff's request for declaratory relief against the President for the same considerations that make injunctive relief inappropriate in this case. *See Samuels v. Mackell*, 401 U.S. 66, 69–73, 91 S.Ct. 764, 766–768, 27 L.Ed.2d 688 (1971).

Accordingly, it is this 21st day of June 1996,

**ORDERED** that defendants' motion for summary judgment be and is hereby **granted;** and it is,

**FURTHER ORDERED** that the above-captioned matter be and is hereby **dismissed with prejudice** from this court's docket.

**SO ORDERED.**

---

8. The court further notes that plaintiff has failed to establish that if the court does not infer a restriction on the President's removal authority, the effective functioning of the NCUA Board would be compromised. The Office of Comptroller of the Currency and the Office of Thrift Supervision, both agencies that are part of the Treasury Department, perform similar functions as does the NCUA Board, albeit with respect to other financial institutions. *See* 12 U.S.C. Sections 1–216d and 12 U.S.C. Sections 1462a–

1468, respectively. The former has authority over national banks, while the latter exercises supervision over savings and loan institutions. Congress has not, however, found it necessary to insulate these entities from executive control.

9. Mr. Nash wrote the letter that advised Mr. Swan that his services were no longer needed. Mr. Hoyle ordered Mr. Swan to vacate his office at the NCUA.