**Jo-Ann BYKOFSKY, on her own behalf and on the behalf of her son, a minor, Shaw Bykofsky, as his guardian, Plaintiffs,**

v.

**The BOROUGH OF MIDDLETOWN et al., Defendants.**

**Civ. No. 75-74.**

United States District Court, M. D. Pennsylvania.

Feb. 18, 1975.

Andrew F. Schneider, Harrisburg, Pa., for plaintiffs.

William M. Young, Jr., James H. Booser, McNees, Wallace & Nurick, Harrisburg, Pa., for defendants.

MEMORANDUM

SHERIDAN, Chief Justice.

Plaintiff, Jo-Ann Bykofsky, on her own behalf and on the behalf of her son, a twelve year old minor, Shaw Bykofsky, as his guardian, filed this action seeking declaratory and preliminary and permanent injunctive relief against the defendants—the Borough of Middletown, Harry Judy, the Mayor of Middletown, Steven Mrakovich, the Chief of Police of Middletown and George Merkel, Middletown Borough Manager. The action is brought under the Civil Rights Act, 42 U.S.C.A. § 1983, and the Federal Declaratory Judgment Act, 28 U.S.C.A. §§ 2201, 2202, and federal jurisdiction is properly predicated on 28 U.S.C.A. § 1343.

Specifically, plaintiffs request the court to declare unconstitutional and enjoin the enforcement of a criminal ordinance of the Borough of Middletown which imposes a curfew on children under the age of sixteen.[1] The ordinance

I.

**"CHAPTER VI**
**CURFEW**

*Section 1.* Curfew Established for Children under Age of Sixteen

*Section 2.* Duties of Parents and Guardians

*Section 3.* Duties of Police

*Section 4.* Penalty Applicable to Parents of Children Violating Curfew Regulations

*Section 1. Curfew Established for Children under Age of Sixteen.* That from and after the passage and publication of this ordinance, no child under the age of *sixteen years* shall be upon any of the public streets, highways, alleys, parks or other public places of the Borough of Middletown, unless such child is accompanied by his or her parent, guardian, or other person having the legal care or custody of such child or is accompanied by a responsible person of good repute over twenty-one (21) years of age, or is in the performance of an errand or duty directed by his or her parent, guardian or legal custodian or whose legal, recognized employment makes it necessary for such child to be in or upon said streets, highways, alleys, parks or other public places after the hour of 10:30 P.M. in which case such child shall carry a certified card of employment signed by the Burgess. *Provided:* wherever, in this ordinance, any specific time of the clock is mentioned, such

time shall be construed to be based upon Eastern Standard Time, Eastern Daylight Saving Time, or whatever other standard of time is generally observed by the public in the Borough, as the case may be.[1] (March 8, 1943, Section 1, as amended by *Ordinance 309*, February 9, 1953, Sections 1 and 2)

*Section 2. Duties of Parents and Guardians.* No parent, guardian or other person having the legal care or custody of a child under the age of sixteen years shall allow or permit any such child to go or be in or upon any of the public streets, highways, alleys, parks or other public places of the Borough of Middletown after 10:30 P.M. except as specified in Section 1 of this ordinance,[2] or unless reasonable necessity can be shown therefor. (March 8, 1943, Section 2, as amended by *Ordinance 309*, February 9, 1953, Section 1)

*Section 3. Duties of Police.* The policemen of the Borough of Middletown upon finding a child under the age of sixteen years in or upon any of the public streets, highways, alleys, parks or other public places of the Borough of Middletown in violation of any of the provisions of this ordinance after

1. Section 5 of the ordinance of March 8, 1943, provided for the repeal of all ordinances or parts thereof in conflict with this ordinance.

prohibits any child under sixteen years of age from being on or upon the public streets, highways, alleys, parks, or other public places of the borough after 10:30 P.M. unless (1) such child is accompanied by his parent, guardian, legal custodian, or is accompanied by a responsible person of good repute over twenty-one years of age; or (2) such child is in the performance of an errand or duty directed by his parent, guardian, or legal custodian; or (3) such child's legal, recognized employment makes it necessary for him to be in or upon the public streets or public places after the hour of 10:30 P.M., in which case such child shall carry a certified card of employment signed by the Burgess. The ordinance further provides that the parent, guardian, or legal custodian shall not allow or permit a child under sixteen years of age to go or be upon any of the public streets, highways, alleys, parks, or other public places of the borough after 10:30 P.M., except as noted above or "unless reasonable necessity can be shown therefor." With respect to the child, the ordinance provides no penalty for a curfew violation, except that a policeman upon finding a child who is violating the ordinance, shall take his name and the name and address of his parent, guardian or legal custodian, send the child home, and file a written report with the Middletown Chief of Police within 24 hours, whereupon the Police Chief shall send to the child's parents, guardians, or legal

custodians a written notice of the violation of the ordinance together with notice that unless the terms of the ordinance are complied with, the penalty provided for in the ordinance will be imposed on them. The ordinance states that a parent, guardian, or legal custodian of a child who subsequently violates the ordinance, after having had notice of the child's first violation, shall upon conviction be sentenced to pay a fine of not more than ten dollars and costs of prosecution, and in default of the payment of the fine and costs shall be imprisoned for a period not exceeding ten days. This is the only criminal penalty imposed by the ordinance, a penalty which falls upon the parent, not the child. The ordinance, as previously noted, does, however, give the Middletown police the power and authority to remove and thereby keep off the public streets after 10:30 P.M. children under the age of sixteen.

A hearing was held on January 24, 1975, solely on plaintiffs' request for a preliminary injunction. Defendants at that time filed a motion to dismiss the complaint and action on the ground the plaintiffs lack standing and on the ground this court should abstain from adjudicating the constitutionality of the borough's ordinance. A trial on the merits with respect to the permanent relief requested will be held later. Thus the court presently is concerned only with the request for a preliminary injunction.

2. Section 1 of this chapter.
the hour of 10:30 P.M. shall take the name of such child and the name and address of the parent, guardian, or person having the legal care and custody of such child, send such child home, and file a written report of the same in the office of the Chief of Police of the Borough within twenty-four (24) hours, whereupon the Chief of Police shall send to the said parent, guardian or legal custodian of such child a written notice of the violation of this ordinance together with notice to such parent, guardian or legal custodian that unless the terms of this Ordinance are complied with the penalty thereof will be invoked against such parent, guardian or legal custodian of such child. (March 8, 1943, Section 3, as amended by *Ordinance 309*, February 9, 1953, Section 1)

*Section 4. Penalty Applicable to Parents of Children Violating Curfew Regulations.* Any parent, guardian or legal custodian of a child under the age of 16 years of age violating any of the portions of this Ordinance after notice thereof as provided in Section 3 [3] shall upon conviction thereof before the Burgess or any Justice of the Peace of the Borough of Middletown be sentenced to pay a fine of not more than ten dollars ($10.00) and costs of prosecution, and in default of the payment of said fine and costs shall be imprisoned in the Jail of Dauphin County for a period not exceeding ten (10) days. (March 8, 1943, Section 4)
3. Section 3 of this chapter."

■ Initially it should be noted that one of the defendants, the Borough of Middletown, is not a "person" within the meaning of 42 U.S.C.A. § 1983 and therefore is not subject to suit under the Civil Rights Act. City of Kenosha v. Bruno, 1973, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109; Monroe v. Pape, 1961, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492; United States ex rel. Gittlemacker v. County of Philadelphia, 3 Cir. 1969, 413 F.2d 84, cert. denied, 1970, 396 U.S. 1046, 90 S.Ct. 696, 24 L.Ed.2d 691. Therefore, no relief will be granted with respect to this defendant.

Defendants assert that since the ordinance has never been enforced against either plaintiff, they lack standing to challenge the constitutionality of the ordinance. Defendants rely on Laird v. Tatum, 1972, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154, for this proposition. Their reliance is misplaced.

■ The Laird case reaffirmed the "established principle that to entitle a private individual to invoke the judicial power to determine the validity of executive or legislative action he must show that he has sustained, or is immediately in danger of sustaining, a direct injury as the result of that action . . .." Ex parte Levitt, 1937, 302 U.S. 633, 634, 58 S.Ct. 1, 82 L.Ed. 493. In Laird plaintiffs had claimed that their first amendment rights were chilled and hence violated by the mere existence of the Army's domestic data-gathering system. The alleged chilling—i. e., deterrent—effect arose merely from the individual plaintiff's knowledge that the Army was engaged in certain activities and their perception of the activities as inherently dangerous and inappropriate to the Army's role under our form of government, and from the concomitant fear that, armed with the fruits of these activities, the Army might in the future take some other and additional action detrimental to the individual plaintiffs. The Court held that such allegations of a subjective "chill" or deterrent effect were an inadequate substitute for a claim of specific objective harm or a threat of specific future harm. 408 U.S. at 13–14, 92 S. Ct. 2318.

■ Unlike in Laird, the plaintiffs in the instant case are presently subject to an ordinance which, according to the testimony of defendant Mrakovich, the Chief of Police of Middletown, is always enforced and was in fact enforced 16 times in 1973 and 11 times in 1974.[2] Thus, in contrast with the claims asserted in the Laird case, the deterrent effect complained of here is one which is grounded in a realistic fear of prosecution if the plaintiffs undertake the conduct proscribed by the ordinance. In Poe v. Ullman, 1961, 367 U.S. 497, 81 S. Ct. 1752, 6 L.Ed.2d 989, the Supreme Court held that the case presented no real controversy justifying the adjudication of a constitutional issue and hence the plaintiff lacked standing because, with a single exception, no one had ever been prosecuted under the challenged statute, which had been enacted in 1879. In contrast, the ordinance in the present case is not moribund and has been and continues to be enforced. Thus, the present case presents a controversy of sufficient immediacy and reality, Golden v. Zwickler, 1969, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113; O'Shea v. Littleton, 1973, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674, to present a justiciable controversy. The criminal ordinance applies to and will be invoked against the plaintiffs if the minor plaintiff, age 12, is present upon the public streets, highways, alleys, parks, or other public places of Middletown after 10:30 P.M. The plaintiffs, therefore, assert a sufficiently direct threat of personal detriment.

The plaintiffs having alleged that a criminal ordinance prohibits and deters constitutionally protected conduct, and the alleged threat of prosecution not being imaginary or speculative, since it is clear that the conduct plaintiffs wish

2. Police Chief Mrakovich testified that Middletown had a population of 9600 but that he did not know how many children under the age of sixteen lived in the borough.

to undertake falls within the proscription of the ordinance, which is vigorously enforced, the case presents a justiciable controversy under Article III of the Constitution which the plaintiffs have standing to litigate. Steffel v. Thompson, 1974, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (Court recognized right of citizen, who had twice been warned to stop handbilling on a sidewalk of a shopping center and threatened with arrest by police if he failed to do so for violating the state's criminal trespass law, though never so arrested, had standing to challenge the constitutionality of the application to him of that statute); Doe v. Bolton, 1973, 410 U.S. 179, 188–189, 93 S.Ct. 739, 35 L.Ed.2d 201 (Court recognized right of physicians, though not charged criminally, to challenge state's abortion statute); *see* Epperson v. Arkansas, 1968, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (Court recognized right of school teacher, though not yet charged criminally, to challenge the state's anti-evolution statute).

 The court now turns to the question of abstention. While it is clear that the court can grant declaratory relief in the instant case if it ultimately decides after the trial on the merits that the ordinance is unconstitutional, Allee v. Medrano, 1974, 416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed.2d 566; Steffel v. Thompson, 1974, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505, this court is squarely faced with the issue not reached in *Allee* and *Steffel* as to whether a *Younger* showing, Younger v. Harris, 1971, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, is necessary to obtain injunctive relief against threatened prosecutions. The court holds that the interwoven precepts of federalism and equitable restraint that combine to make up the *Younger* doctrine of non-intrusion in the administration of state criminal justice require that the court refrain from the issuance of injunctive relief, at least under the circumstances of this case.

In Younger v. Harris, 1971, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, and its companion cases, Samuels v. Mackell,

1971, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688; Boyle v. Landry, 1971, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696; Perez v. Ledesma, 1971, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701, the Court held that a federal court may not interfere in an ongoing state criminal proceeding absent a showing of prosecutorial bad faith or harassment, or other "extraordinary circumstances." The Court based its holding in part on the notion of federalism or comity, which the Court defined as

" . . . a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." 401 U.S. at 44, 91 S.Ct. at 750.

The *Younger* Court made clear that among the state functions of which a federal court must be particularly respectful is the administration of state criminal justice. *Accord:* Douglas v. City of Jeannette, 1943, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324; Watson v. Buck, 1941, 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416; Fenner v. Boykin, 1926, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927; Railroad Commission v. Pullman, 1941, 312 U.S. 496, 500, 61 S.Ct. 643, 85 L.Ed. 971.

The *Younger* decision clearly implies that any sort of federal injunctive relief against the enforcement of a state criminal statute is normally an improper interference, unless the *Younger* test of prosecutorial bad faith or harassment, or other extraordinary circumstances, is met. The *Younger* Court stated the following:

" . . . In Fenner v. Boykin, 271 U.S. 240 [46 S.Ct. 492, 70 L.Ed. 927] (1926), suit had been brought in the Federal District Court seeking to enjoin state prosecutions under a recently enacted state law that allegedly interfered with the free flow of interstate commerce. The Court, in a

unanimous opinion made clear that such a suit, *even with respect to state criminal proceedings not yet formally instituted,* could be proper only under very special circumstances:

'Ex parte Young, 209 U.S. 123 [28 S.Ct. 441, 52 L.Ed. 714], and following cases have established the doctrine that, when absolutely necessary for protection of constitutional rights, courts of the United States have power to enjoin state officers *from instituting criminal actions.* But this may not be done, except under extraordinary circumstances where the danger of irreparable loss is both great and immediate. Ordinarily, there should be no interference with such officers; primarily, they are charged with the duty of prosecuting offenders against the laws of the state, and must decide when and how this is to be done. The accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection.' *Id.,* at 243-244, [46 S.Ct. 492 at 493].

These principles, made clear in the *Fenner* case, have been repeatedly followed and reaffirmed in other *cases involving threatened prosecutions.* See *e. g.,* Spielman Motor Sales Co. v. Dodge, 295 U.S. 89 [55 S.Ct. 678, 79 L.Ed. 1322] (1935); Beal v. Missouri Pac. R. Co., 312 U.S. 45 [61 S.Ct. 418, 85 L.Ed. 577] (1941); Watson v. Buck, 313 U.S. 387 [61 S.Ct. 962, 85 L.Ed. 1416] (1941); Williams v. Miller, 317 U.S. 599 [63 S.Ct. 258, 87 L. Ed. 489] (1942); Douglas v. City of Jeannette, 319 U.S. 157 [63 S.Ct. 877, 87 L.Ed. 1324] (1943).

In all of these cases the Court stressed the importance of showing irreparable injury, the traditional prerequisite to obtaining an injunction. In addition, however, the Court also made clear that in view of the fundamental policy against federal interference with state criminal prosecutions, even irreparable injury is insufficient unless it is 'both great and immediate.' *Fenner, supra.* Certain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered 'irreparable' in the special legal sense of that term. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution. See *e. g.,* Ex parte Young, *supra,* [209 U.S.] at 145–147, [28 S. Ct. 441, at 447–449.] Thus, in the *Buck* case, *supra,* [313 U.S.] at 400 [61 S.Ct. 962, at 966,] we stressed:

'Federal injunctions *against state criminal statutes,* either in their entirety or with respect to their separate and distinct prohibitions, are not to be granted as a matter of course, even if such statutes are unconstitutional. "No citizen or member of the community is immune from prosecution, in good faith, for his alleged criminal acts. The *imminence of such a prosecution* even though alleged to be unauthorized and hence unlawful is not alone ground for relief in equity which exerts its extraordinary powers only to prevent irreparable injury to the plaintiff who seeks its aid." Beal v. Missouri Pacific Railroad Corp., 312 U.S. 45, 49, [61 S.Ct. 418, 420, 85 L.Ed. 577].'

And similarly, in *Douglas, supra,* we made clear, after reaffirming this rule, that:

'It does not appear from the record that petitioners have been threatened with any injury other than that incidental to every criminal proceeding brought lawfully and in good faith . . . .' 319 U.S. at 164 [63 S.Ct. 877 at 881].

. . . . .

In other words, the injury that Harris faces is solely 'that incidental to every criminal proceeding brought

lawfully and in good faith,' *Douglas, supra,* and therefore under the settled doctrine we have already described he is not entitled to equitable relief 'even if such statutes are unconstitutional.' *Buck, supra."* 401 U.S. at 45–47, 49, 91 S.Ct. at 751. (Emphasis supplied.)

In Roe v. Wade, 1972, 410 U.S. 113, 126–127, 93 S.Ct. 705, 35 L.Ed.2d 147, the Court expressly rejected the request of a doctor, being prosecuted in a state court, for injunctive relief directed only against *future* prosecutions under a state's abortion statute on the ground comity barred such relief. 410 U.S. at 126–127, 93 S.Ct. 705.

 The issuance of a preliminary injunction in the instant case against the enforcement of the borough ordinance would certainly constitute a major intrusion into the administration of state criminal justice and would be squarely in conflict with the spirit of comity expressed in *Younger* and in *Roe. But see* Lake Carriers' Association v. MacMullan, 1972, 406 U.S. 498, 92 S.

Ct. 1749, 32 L.Ed.2d 257.[3] Thus, in the instant case where there are no allegations of prosecutorial bad faith or harassment, or other extraordinary circumstances,[4] the court would refuse to grant the preliminary injunction solely on the comity precept embodied in *Younger.*

However, the court need not rely solely on comity for its refusal to grant injunctive relief in this case. A critical aspect of *Younger's* limitations upon federal incursions into the state criminal justice system is the concept of equitable restraint which, interwoven with the concept of federalism, form the basis for the anti-injunctive strictures of *Younger.*

The precepts of equitable restraint establish that a federal court should not enjoin threatened prosecutions except when necessary to prevent irreparable harm which is great and immediate. Douglas v. City of Jeannette, 1943, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324; Watson v. Buck, 1941, 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416; Fenner v. Boykin, 1926, 271

3. This court does not believe that the dicta in *Lake Carriers* could have decided the issues which were so carefully discussed in *Younger* and its companion cases. Samuels v. Mackell, 1971, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688; Boyle v. Landry, 1971, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 676; Perez v. Ledesma, 1971, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701. Moreover, the issue of whether a *Younger* showing is necessary to obtain injunctive relief against threatened prosecutions was expressly reserved in the recent cases of Allee v. Medrano, 1974, 416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed.2d 566 and Steffel v. Thompson, 1974, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505. This court finds the careful reasoning of *Younger* on the issue, although also dicta, more convincing than the conclusory dicta of *Lake Carriers. See* Independent Tape Merchant's Association v. Creamer, M.D.Pa.1972, 346 F.Supp. 456.

4. In *Younger* the Supreme Court stated: "There may, of course, be extraordinary circumstances in which the necessary irreparable injury can be shown even in the absence of the usual prerequisites of bad faith and harassment." 401 U.S. at 53, 91 S.Ct. at 755. The Court then pointed to an illustration of what such circumstances might be, quoting

from Watson v. Buck: "It is of course conceivable that a statute might be flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." 401 U.S. at 53–54, 91 S.Ct. at 755. No other definition or illustration of the "extraordinary circumstances" exception has ever been undertaken by the Supreme Court. But in the recent case of Allee v. Medrano, 1974, 416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed. 2d 566, Chief Justice Burger, joined by two other members of the Court, appeared to interpret *Younger* in a manner that leaves no room for any extraordinary circumstances exception: "To meet the Younger test the federal plaintiff *must* show manifest bad faith and injury that is great, immediate, and irreparable, constituting harassment of the plaintiff in the exercise of his constitutional rights, and resulting in a deprivation of meaningful access to the state courts." 416 U.S. at 836, 94 S.Ct. at 2210. (Emphasis supplied.) Thus, uncertainty exists concerning what circumstances, if any, will warrant federal intrusion under the "extraordinary circumstances" exception. In the instant case it is clear that no extraordinary circumstances exist.

U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927; *see* Younger v. Harris, supra. It is clear that the cost, anxiety, and inconvenience which the plaintiffs may suffer in defending against a single criminal prosecution brought in good faith cannot in itself constitute irreparable harm. Younger v. Harris, supra; Douglas v. City of Jeannette, supra. Moreover, the mere allegation of the threat of prosecution falls far short of establishing irreparable harm if the state is allowed to prosecute in the normal manner. Beal v. Missouri Pacific Railroad Corp., 1941, 312 U.S. 45, 61 S.Ct. 418, 85 L.Ed. 577; Musick v. Jonsson, 5 Cir. 1971, 449 F.2d 201; *cf.* Boyle v. Landry, 1971, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696.

The ordinance penalty to which the plaintiff parent is subject in the instant case consists only of a fine of up to ten dollars plus costs of prosecution, and upon failure to pay said fine and costs, imprisonment up to ten days. No criminal penalty is imposed on the minor, except to the extent that his removal from the public streets to his home by the police be viewed as a quasi-criminal penalty. In three cases involving threatened prosecutions under statutes which exposed plaintiffs only to fines (in no case exceeding one thousand dollars) and not imprisonment, except upon failure to pay the fine, the Supreme Court held that such circumstances did not warrant a finding of irreparable injury and thus refused to grant injunctive relief against the threatened prosecutions. Douglas v. City of Jeannette, 1943, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324; Beal v. Missouri Pacific Railroad, 1941, 312 U.S. 45, 61 S.Ct. 418, 85 L.Ed. 577; Spielman Motor Sales Co. v. Dodge, 1935, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322. In Williams v. Miller, 1942, 317 U.S. 599, 63 S.Ct. 258, 87 L.Ed. 489, aff'g per curiam N.D.Cal.1943, 48 F. Supp. 277, where the penalties imposed for a violation of the contested statute ranged up to six months in jail and a fine of five hundred dollars, the Court held that "the bill does not allege facts which would warrant the granting of equitable relief." 317 U.S. at 599, 63 S.Ct. at 258. However, in Toomer v. Witsell, 1948, 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460, the Court enjoined the enforcement of a state statute regulating commercial shrimp fishing, a violation of which entailed suspension of the violator's shrimp boat license as well as a maximum of a one thousand dollar fine, imprisonment for a year, or a combination of a five hundred dollar fine and a year's imprisonment. In *Toomer* the Court reasoned that since defiance of the statute would subject certain of the plaintiffs to "the risk of heavy fines and long imprisonment" and "required payment of large sums of money for which South Carolina provides no means of recovery," these plaintiffs had demonstrated under the circumstances of that case irreparable injury. 334 U.S. at 392, 68 S.Ct. at 1160. These five cases, taken together, indicate that the Supreme Court has found irreparable injury to exist whenever there is no means of securing a decision on the constitutionality of legislation other than by violating the statute, when the penalities prescribed for violation of the statute include imprisonment. Since the ordinance in the present case does not impose imprisonment as a penalty, but merely provides for the payment of a fine up to ten dollars plus costs of prosecution, there is a lack of sufficient irreparable injury under the aforementioned Supreme Court cases to justify injunctive relief against a threatened prosecution under the ordinance.

There is another equally compelling reason why irreparable injury is lacking in the instant case. Irreparable harm exists only when there is no adequate remedy at law. While injunctive relief was the only form of federal relief available when many of the aforementioned cases were decided, today it is possible to obtain, pursuant to 28 U.S. C.A. §§ 2201, 2202, a declaratory judgment that a challenged state statute is unconstitutional. Congress plainly intended declaratory relief to act as an alternative to the strong medicine of the

injunction and to be utilized to test the constitutionality of state criminal statutes. Steffel v. Thompson, 1974, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505. With the enactment of the Federal Declaratory Judgment Act, citizens were no longer left with the option, either to violate the ordinance and take their chances in testing the constitutionality in a criminal prosecution, or else to forego, in fear of prosecution, the exercise of claimed rights or constitutionally-protected conduct. The traditional prerequisite for the granting of injunctive relief—demonstration of irreparable injury—is not a prerequisite to the granting of declaratory relief. Steffel v. Thompson, 415 U.S. at 471–472, 94 S.Ct. 1209. Thus, the Federal Declaratory Judgment Act, 28 U.S.C.A. §§ 2201, 2202, clearly provides plaintiffs in the instant case with an adequate remedy at law and hence the irreparable injury needed to justify the issuance of injunctive relief is lacking.

For all of the foregoing reasons, the equitable doctrine that a federal court should not enjoin threatened state prosecutions, except when necessary to prevent irreparable harm which is great and immediate—a precept whose substance is an integral part of the doctrine of federal non-intrusion—makes it apparent that an injunction would be improper in the present case.

Moreover, the injury the plaintiffs face is solely that incidental to every criminal proceeding brought lawfully and in good faith. Thus, assuming a *Younger* showing must be made, the plaintiffs clearly have not demonstrated the type of irreparable injury needed to justify equitable relief. Younger v. Harris, 401 U.S. at 49, 91 S.Ct. 746, 27 L.Ed.2d 669; Douglas v. City of Jeannette, 1943, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324; Watson v. Buck, 1941, 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416; Fenner v. Boykin, 1926, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927; Independent Tape Merchant's Association v. Creamer, M.D.Pa.1972, 346 F.Supp. 456, 459–460; cf. Lewis v. Kugler, 3 Cir. 1971, 446 F.2d 1343.[5] In addition, the Supreme Court's description of declaratory relief as a milder alternative to injunctive relief that has a "less intrusive effect on the administration of state criminal laws" than the injunction, Steffel v. Thompson, 1974, 415 U.S. at 469, 94 S.Ct. at 1221, indicates that in accordance with the dictates of the concept of

5. In Lewis v. Kugler, 3 Cir. 1971, 446 F.2d 1343, the Court of Appeals for the Third Circuit held that the *Younger* absention doctrine had no application with respect to certain claims of unconstitutional police conduct by plaintiffs who did not have criminal prosecutions pending against them at the time the federal proceeding began. The *Kugler* case is distinguishable from the instant case in that the plaintiffs in *Kugler* did not challenge the constitutionality nor seek to enjoin the enforcement of a state criminal statute. Rather plaintiffs merely sought to enjoin certain alleged unconstitutional police practices—to wit, the alleged practice by the New Jersey State Police of unreasonable searches of vehicles driven by long-haired travellers and searches of such travellers themselves without probable cause, in violation of plaintiffs' constitutional rights. Injunctive relief prohibiting enforcement of a state criminal ordinance is a much more serious intrusion into the state criminal justice system than an injunction directed at specific unconstitutional *police conduct*, which may never lead to a criminal prosecution. With respect to the plaintiffs who did have prosecutions pending against them, prosecutions in which the alleged unconstitutional searches and seizures formed the basis of the state criminal charges, the *Kugler* court did abstain on the basis of *Younger*. *Accord*: Roe v. Wade, 1973, 410 U.S. 113, 126–127, 93 S.Ct. 705, 35 L.Ed.2d 147; Stefanelli v. Minard, 1951, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138. To have abstained with respect to the plaintiffs against whom no criminal charges had been lodged would have left these plaintiffs totally without a forum in which to litigate their federal constitutional claims of police harassment. Moreover, *Younger* is concerned with federal interference with the enforcement of state criminal statutes and the resulting interference with state prosecutions, actual or threatened, not with police conduct. *See* Heard v. Rizzo, E.D.Pa.1968, 281 F.Supp. 720, *aff'd*, 1968, 392 U.S. 646, 88 S.Ct. 2307, 20 L.Ed.2d 1358. Thus, *Kugler*, which did not pose a challenge to the constitutionality of a state statute or ordinance, is inapposite with respect to the abstention issue before the court in the instant case.

comity, only declaratory relief should be granted in threatened prosecution cases.

The court holds that the plaintiffs in the instant case—who presented no evidence at the preliminary injunction hearing but only presented oral argument to the effect that the ordinance was vague, overbroad, had a chilling effect on plaintiffs' constitutional rights, and hence was unconstitutional on its face—have failed for all the foregoing reasons to present a case for casting aside either the precept of comity or the precept of equitable restraint that combine to make up the *Younger* doctrine of federal non-intrusion in the administration of the state criminal justice system.

In addition, the instant case does not fit within the rationale of Dombrowski v. Pfister, 1965, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22. First, plaintiffs have not attacked the good faith of the defendants in enforcing the ordinance. Younger v. Harris, 401 U.S. at 50–54, 91 S.Ct. 746. Second, there has been no showing that action taken under this ordinance has had a chilling effect on freedom of expression, freedom of speech, or the right peaceably to protest. There is no evidence that this law interferes with the protected first amendment rights of the plaintiffs. The court does not view the ordinance on its face as one which in any way regulates expression. *Dombrowski* was not concerned with alleged chilling or deterrent effects on non-freedom of expression rights. Heard v. Rizzo, E.D.Pa.1968, 281 F.Supp. 720, 729–730, aff'd, 1968, 392 U.S. 646, 88 S.Ct. 2307, 20 L.Ed.2d 1358. Thus, the allegations of the complaint depict a situation in which defense of the state's criminal prosecution will assure adequate vindication of constitutional rights. Younger v. Harris, 401 U.S. at 50–54, 91 S.Ct. 746.

For federal courts to exercise their equitable power in threatened prosecution cases as a matter of course, without requiring a *Younger* showing, would expose every state criminal justice system to insupportable disruption. *Cf.* O'Shea v. Littleton, 1974, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674. It would provide a means to subvert the orderly, effective prosecution of local crime in local courts. It is generally to be assumed that state courts and prosecutors will observe constitutional limitations as expounded by the federal courts, and that the mere possibility of erroneous initial application of constitutional standards will usually not amount to the irreparable injury necessary to justify a disruption of state criminal justice. This is not a case in which the lack of a pending state action means that the impact of federal injunctive relief upon a state's administration of its criminal laws will be minimal. On the contrary, it is the court's opinion that the issuance of a preliminary injunction would be highly disruptive in that the Borough of Middletown would in effect no longer have an enforceable curfew,[6] even though the constitutionality of the ordinance has yet to be adjudicated.

For all the foregoing reasons, plaintiffs' request for a preliminary injunction will be denied.

Since the court has decided that plaintiffs have standing to litigate the claims asserted and that the court should not abstain with respect to declaratory relief, defendants' motion to dismiss the complaint and the action will be denied.

Awaiting the trial on the merits, the court intimates no opinion as to the constitutionality of the ordinance.

The foregoing shall constitute the court's findings of fact and conclusions of law.

---

6. Harry Judy, the Mayor of Middletown, testified that the ordinance furthered the following borough interests: (1) the protection of young children; (2) the enforcement of parental control of and responibility for their children; (3) the control of nocturnal juvenile activities and prevention of nocturnal juvenile crime.